Peck, Respondent, vs. City of Baraboo, Appellant.

*September 16—December 7, 1909.*

(1-3) *Special verdict: Negligence: Proximate cause: Liberal construction.* (4, 5) *Municipal corporations: Sewers: Surface water: Injury to lands.* (6) *Costs: Printing: Disregard of court rules.*

1. A special verdict finding that in each of two separate acts or omissions there was a want of ordinary care on the part of defendant, and further finding, without specific reference to either, that "such want of ordinary care" was the proximate cause of plaintiff's injury, is insufficient if one of such acts or omissions was not actionable.

2. The words of a special verdict should be liberally construed with a view to supporting it.

3. Want of ordinary care in "adopting" a plan for a sewer, found by a special verdict, is construed to mean want of such care in selecting the plan and in examining and passing upon its sufficiency, or in failing to examine and pass upon its sufficiency, or in constructing a sewer or series of sewers without any definite plan, and not merely in voting upon a resolution of adoption.

4. If a city first collect surface water in a sewer or drain and thereafter, by reason of negligent construction or maintenance of the sewer or drain, allow the water so collected to escape upon adjacent land, it will be liable for the damage caused thereby.

5. But a city cannot be held in damages by the landowner for changing the natural flow and increasing the volume of surface water on his premises by the construction of streets and gutters, nor because a sewer was inadequate, either by reason of negligence in adopting plans in the first place or by reason of negligent failure to maintain the sewer in good working order thereafter, to carry off the surface water as fast as it accumulated.

6. Costs are disallowed for printing a case and brief in which Supreme Court Rules 9-12 were disregarded.

Appeal from a judgment of the circuit court for Sauk county: E. Ray Stevens, Circuit Judge. *Reversed.*

For the appellant there was a brief by *John M. Kelley,* attorney, and *F. R. Bentley,* of counsel, and oral argument by *Mr. Kelley.*

For the respondent there was a brief by *Grotophorst, Evans & Thomas,* and oral argument by *E. A. Evans.*

The following opinion was filed October 5, 1909:

TIMLIN, J.   In the circuit court the respondent presented a complaint charging the appellant with negligence in the adoption of a plan for a sewer or system of sewerage which was partly upon the street in front of respondent's property, also negligence in failing to adopt any plan for the same, also negligence in maintaining such sewer; and averred that, in consequence of such negligence, the respondent was damaged by a flow of surface water on his premises on May 22, 1907, which water the sewer so negligently constructed and maintained failed to carry off after a heavy rainfall.   The jury, after hearing the evidence, arguments, and instructions, returned a special verdict as follows:

"(1) Did the defendant use ordinary care in adopting the plan for the Barker street sewer? A. No.

"(2) Did the defendant use ordinary care in maintaining such sewer? A. No.

"(3) Was the rain of May 22, 1907, an extraordinary rain? A. No.

"(4) If you answer 'No' to either question No. 1 or question No. 2, was such want of ordinary care the proximate cause of the injury sustained by plaintiff May 22, 1907? A. Yes.

"(5) Did the sewer in front of plaintiff's property on May 22, 1907, carry anything but surface water? A. Yes."

The respondent's damages were assessed by the jury at $370.   Respondent moved for judgment in his favor upon this verdict, and the learned trial judge added a conclusion from the evidence, or a finding, that the land and streets adjacent to respondent's property had been so graded as to increase the flow of surface water down to and upon such property, and ordered judgment in favor of respondent.

It will be noticed that there is no averment in the pleading, and no finding by the jury, that the water was first collected by the city in the sewer and then escaped upon respondent's

land, nor were the waters backed up upon the respondent's land after having been taken into the sewer by reason of defects in the construction or maintenance of the sewer, nor were respondent's premises connected with the sewer. The verdict, taken with the complaint, merely affirms that after a heavy, but not an extraordinary, fall of rain the premises of the respondent were injured—*i. e.* damaged—from the action of surface water covering the same, which surface water the sewers in question failed to carry off as it fell in rain. (The fifth finding of the jury is too indefinite, and, assuming its verity, it establishes nothing material.) The city did not use ordinary care in adopting a plan for a designated sewer which we will assume to include the sewer in question adjoining respondent's premises. The city did not use ordinary care in maintaining this sewer. One of these two lapses was the proximate cause of the injury to respondent, which means the damage to his property; but which alleged breach of duty caused the damage is not found. No doubt such a special verdict would be quite sufficient in form if the first question as answered, and the second question as answered, each established an invasion of respondent's legal rights, a breach of legal duty owing from the appellant to the respondent, or, in case one of the questions was answered in the affirmative and one in the negative, and that answered in the negative established such breach of duty. But in case both are answered in the negative, and either fails to set forth an actionable wrong, or neither of the first two questions of the verdict sets forth an actionable wrong, that is to say, a breach of legal duty due from appellant to respondent, it must be obvious that the jury have failed to find affirmatively that the damages suffered by the respondent were caused by any wrong or delict on the part of appellant. This would be a fatal defect. This form of special verdict is disapproved because it is at best only contingently good. That is, sufficient upon the contingency of the jury answering both the first and second ques-

tions in the negative, that both are supported by evidence, and that each as answered constitutes a delict for which defendant is answerable to the plaintiff; or in the contingency that one is answered in the affirmative and the other in the negative, and the latter finds the defendant guilty of an actionable wrong.

We think the words of the special verdict should receive, with a view to support the verdict, great liberality of construction, and we therefore assume that want of ordinary care in adopting a plan means want of such care in selecting the plan and in examining and passing upon its sufficiency, or in failing to examine and pass upon its sufficiency, or in constructing a sewer or series of sewers without any definite plan, although the narrower meaning of adopting by merely voting upon a resolution might be urged.

Inquiring into the legal duty due from a city to a lotowner with reference to the construction of sewers, we find it noted (10 Am. & Eng. Ency. of Law, 2d ed. 239) that the decisions of the courts on this subject are by no means harmonious. The same comment is made at Id. 249, with reference to the liability of a municipal corporation for damages to private property caused by surface water. Whenever this condition of discord is found among the precedents, it is advisable to confine ourselves to the law of this state, so that the interstate discord may not become local and internecine. Carelessly and negligently constructing streets lying to the north and west of certain land by reason of which large quantities of surface water which would otherwise have passed off in other directions were conducted through the drains or gutters of such streets and cast in a body on his land, and at the same time raising the grade of a street to the south or southwest of his land so as to retain on the land the waters thus cast upon it, was held to confer no right of action in favor of the owner of the land and against the city doing these acts. *Harp v. Baraboo,* 101 Wis. 368, 77 N. W. 744. It will be observed

that this case confirms the right of the city by construction
and grading of streets to change the flow of surface water so
as to bring down upon a lotowner from new watersheds sur-
face water which would not, but for such street grading, have
taken that course or reached his lot. In *Clauson v. C. &
N. W. R. Co.* 106 Wis. 308, 82 N. W. 146, the railroad
company by a ditch on its right of way parallel with its track
carried surface water, which would otherwise never have
reached the plaintiff's land, out of its natural and usual
course and direction, and cast it upon the land of the plaint-
iff. This ditch was necessary to the use and enjoyment of
the defendant's property, and the act was held *damnum
absque injuria.* In *Helh v. Fond du Lac,* 63 Wis. 228,
23 N. W. 495, the city in the construction and grading of
streets so changed the course and flow of surface water as to
bring an increased flow in the drain leading towards plaint-
iff's land and cast upon plaintiff's land large quantities of
surface water, part of which but for this drain would never
have reached plaintiff's land, but would have passed off in a
different direction. It was held that the city was not liable.
In *Champion v. Crandon,* 84 Wis. 405, 54 N. W. 775, it was
ruled that in the construction and draining of streets the town
might change the natural flow of surface water on the streets
so as to bring to the plaintiff's land surface water which would
not naturally flow there, and that neither a defective plan nor
negligence in the doing of such work would support the lia-
bility of the town. But the city is not without liability in a
proper case for the negligent construction or maintenance of
a sewer. If the city first collect surface water in a sewer or
drain and thereafter, by reason of negligent construction or
maintenance of the sewer or drain, allow it to escape upon
land adjacent to the sewer, the city will be liable for the dam-
age caused thereby. *Schroeder v. Baraboo,* 93 Wis. 95, 67
N. W. 27; *Hart v. Neillsville,* 125 Wis. 546, 104 N. W. 699.
This is the distinguishing point in *Gilluly v. Madison,* 63

Wis. 518, 24 N. W. 137. It will be noticed that in the case
last cited, although it is stated in the opinion that the surface
water was collected from other sources than the street and
otherwise would not have run to plaintiff's lot, there was pres-
ent the fact of collecting these waters in the ditch or drain
and leading them to a point therein in proximity to plaintiff's
lot, where, by reason of the negligently defective condition of
the drain, they were discharged upon plaintiff's lot. In view
of other cases in this court, that must be considered the turn-
ing point in *Gilluly v. Madison, supra.*

A municipality, after it has made provision by a drain or
sewer for carrying off surface water, may discontinue or
abandon the drain or sewer if the landowners are thereby left
in no worse condition with reference to the surface water set
back than if the sewer had never been constructed. *Waters
v. Bay View,* 61 Wis. 642, 21 N. W. 811. If the municipal-
ity may omit this intentionally, it may omit it negligently
without incurring any liability. This does not apply gener-
ally to acts done as it does to acts omitted. This last case
negatives the existence of a right of action by the lotowner
against the city on account of damages from surface water set
back upon the lot, which water the sewers of the city were in-
sufficient to carry off by reason of lack of capacity for that
purpose or by reason of the clogging or discontinuance of the
sewer. This probably would not apply to the extent stated to
injuries arising from sewage or other agencies than surface
water and caused by the negligently defective condition of
the sewer; but it is quite remarkable in this connection that
in *Folk v. Milwaukee,* 108 Wis. 359, 84 N. W. 420, it was
ruled that the city was not liable for the death of a pupil in a
public school caused by sewer gas escaping into the school
building from a sewer which the city had knowingly and neg-
ligently allowed to become clogged up and out of repair.

The common law recognizes some distinction between the
right of a landowner to repel the inflow of surface water upon

his land and his right to relieve his land of surface water accumulating thereon from snow or rain or descending upon his land from higher levels. The case of *Lessard v. Stram,* 62 Wis. 112, 22 N. W. 284, is here worthy of notice because there the town dammed against surface water and thereby threw it out of its natural course onto the land of the defendants. The latter dammed against this surface water so attempted to be thrown upon their land and thereby threw the surface water again out of its natural course and upon the lands of plaintiff, to his damage. It was ruled that this right to repel surface water existed, not only against the upper proprietor, but generally. *Johnson v. C., St. P., M. & O. R. Co.* 80 Wis. 641, 50 N. W. 771, also recognizes the right of the railroad company to repel surface water from its right of way, although the exercise of this right resulted in casting the surface water out of its natural course and upon the land of another.

Among the rules of law relating to surface water the following, quoted with approval in *Shaw v. Ward,* 131 Wis. 646, 111 N. W. 671, and in other cases in this court, is essentially paramount:

"The right of an owner of land to occupy and improve it in such manner and for such purposes as he may see fit, either by changing the surface or the erection of buildings or other structures thereon, is not restricted or modified by the fact that his own land is so situated with reference to that of adjoining owners that an alteration in the mode of its improvement or occupation in any portion of it will cause water which may accumulate thereon by rains and snows falling on its surface or flowing onto it over the surface of adjacent lots either to stand in unusual quantities on other adjacent lands, or pass into and over the same in greater quantities or in other directions than they were accustomed to flow." See, also, *Manteufel. v. Wetzel,* 133 Wis. 619, 114 N. W. 91.

It has been declared to be the law of this state in *Clauson v. C. & N. W. R. Co.* 106 Wis. 308, 82 N. W. 146, and in

other cases there cited, that a municipal corporation, in the improvement of its streets by paving, grading, and guttering, has the same right to obstruct and divert the existing flow of mere surface water that an individual owner has in the improvement of his land, and that a railroad corporation has the like right. While this is no doubt correct as a proposition of law, there is an essential distinction of fact between the uses necessary to make a street or a railway right of way available for street or railway purposes and the improvements necessary to make agricultural or other land available for the purposes for which such land is adapted. In constructing or leveling a street or railroad, different watersheds carrying surface water in various directions may necessarily be intercepted in the extension of the street or railroad, and, as we have seen, the surface water from each may be carried along in the direction of the street or railroad and discharged at some low point, subject only to those legal rules which regulate the *manner of exercising* conceded legal rights generically represented in the maxim: *Sic utere tuo ut alienum non lædas.* This interception and change of different watersheds can rarely be necessary to the enjoyment and use of agricultural lands, and in view of the limitation expressed in *Manteufel v. Wetzel,* 133 Wis. 619, 114 N. W. 91, and the great number of cases collected in note 2, p. 337, and note 7, p. 335, 30 Am. & Eng. Ency. of Law (2d ed.), bearing on this subject, and in view of some suggested distinction in *Wendlandt v. Cavanaugh,* 85 Wis. 256, 55 N. W. 408, and again in *Schuster v. Albrecht,* 98 Wis. 241, 73 N. W. 990, between the acts of private owners in this respect and those of municipal corporations, and because the extent of the right of a private owner in this respect is not necessarily involved in this case, it seems best to express no opinion thereupon.

The instant case presents upon the pleadings, verdict, and finding no question of liability for discharging upon the land of the respondent surface water accumulated in a pond or res-

ervoir, nor of allowing surface water to escape from a negligently defective sewer after the corporation has taken the water into the sewer and assumed the carrying of it to the place of discharge. On the contrary, there is no liability shown, because in line with the cases herein cited a municipal corporation cannot be held in damages by a landowner for changing the natural flow of and increasing the volume of surface water by the construction of streets and gutters, nor because the sewer was inadequate by reason of negligence in adopting plans in the first place, or by reason of negligently failing to maintain the sewer in good working order thereafter, to carry off the surface water so accumulating as fast as it accumulated.

The printed case presented by appellant does not contain a fair statement of the evidence. The brief contains no assignments of error. It contains numerous propositions of fact averred to be in evidence without any reference to the printed case or the record to show upon what such propositions are based. It contains no adequate statement of the nature of the action nor of the issues involved, nor of the leading facts and conclusions which the evidence tends to establish. In short, Rules 9, 10, 11, and 12 of this court have been flagrantly disregarded. Therefore no costs will be allowed to be recovered by appellant for the expense of printing the case or brief.

*By the Court.*—The judgment of the circuit court is reversed, with costs in favor of appellant, except the expense of printing case and brief, which is disallowed, and the cause is remanded with directions to render judgment for defendant.

Winslow, C. J., took no part.

A motion for a rehearing was denied December 7, 1909.