KRUCK, by guardian *ad litem,* Respondent, vs. WILBUR LUMBER COMPANY, Appellant.

*December 9, 1911—January 9, 1912.*

*Master and servant: Injury: Unguarded machinery: Duty of master: Statute construed: Questions for jury: Contributory negligence: Assumption of risk: Special verdict: Actionable negligence: Proximate cause: Damages: Minors: Instructions to jury.*

1. A mistake whereby the wrong belt was designated in a question submitted for special verdict was immaterial where there was no doubt which belt was meant and the jury was evidently not misled.

2. Where a rapidly revolving belt was so located as to come within two or three inches of the sleeve of the operator of a machine when he attempted to make adjustments with a wrench, it was a question for the jury whether it was so located that under sec. 1636*j*, Stats. (1898), it was required to be securely guarded.

3. The knives in one of the heads of a "molding sticker" in a planing mill were neither "shafting" nor "gearing" within the meaning of sec. 1636*j*, Stats. (1898), and were not required thereby to be guarded. Whether or not, in this case, such knives were so located that, irrespective of statutory requirements, the master was charged with the duty of guarding them, was a question for the jury.

Kruck v. Wilbur Lumber Co. 148 Wis. 76.

4. Even though such knives should have been guarded, yet, such guarding not being required by sec. 1636j, Stats. (1898), the employer may, in an action for injuries to an employee caused by such knives, defend upon the ground that the plaintiff assumed the risk.

5. Where the trial court refused defendant's request to have a certain issue submitted to the jury, it cannot be deemed to have found such issue in favor of plaintiff, under sec. 2858m, Stats. (Laws of 1907, ch. 346), by ordering judgment in his favor.

6. A finding by the jury to the effect that an employer ought to have guarded certain machinery which the statute did not require to be guarded, without any finding upon the controverted issue as to whether the injured employee assumed the risk of its unguarded condition, establishes only nonactionable negligence.

7. A finding by the jury that the proximate cause of plaintiff's injury was both actionable and nonactionable negligence on the part of defendant, will not sustain a judgment for plaintiff—it being essential that there be a specific finding that defendant's actionable negligence was such proximate cause.

8. In a special verdict the question relating to proximate cause should be so framed that any responsive answer will disclose what actionable negligence of defendant was or was not the proximate cause of plaintiff's injury.

9. In an action for injuries to a seventeen-year-old employee in a planing mill, sustained in attempting to adjust the head of a "molding sticker" while it and the pulleys were in motion, upon evidence showing, among other things, that he had been instructed by the foreman to do so and that other employees customarily did it with the parts in motion, the question of contributory negligence was one for the jury.

10. A finding by the jury in such case absolving plaintiff from contributory negligence cannot be considered as a finding that he did not assume the risk from unguarded revolving knives of the machine, especially in view of the instructions given to the jury and of the statute, sec. 1636j, Stats. (1898).

11. In an action by a minor for personal injuries, where there was no evidence of emancipation, it was error to instruct the jury that they might allow for diminished earning capacity from the time of the injury, instead of from the time of plaintiff's majority. [Whether such error alone would be ground for reversal, not determined.]

APPEAL from a judgment of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Reversed.*

This is an action to recover damages for personal injuries

received by the plaintiff August 13, 1909, while working at a machine called a "molding sticker" in defendant's planing mill at Waukesha, resulting in the amputation of four fingers of his left hand.   The plaintiff was seventeen years old at the time of the injury and had been employed by defendant continuously for about a year and a half previous thereto; during all of which time, except about two weeks before the injury, he worked near the sticker machines.   His duties were to stack and tie into bundles the moldings that were turned out from these machines and send same to the job room, and for about three days prior to the time he was ordered to operate the machine in question he fed strips of lumber into what is called the "big sticker" machine.   On the 13th day of August, 1909, the plaintiff was directed by the defendant's foreman to operate a certain sticker machine.   The use which such a machine serves is to cut and shape wooden moldings out of strips of lumber that are fed to it by the operator at one end thereof, and the finished product is removed and carried away, after it has passed through the machine, at the other end. ' A brief and general description of the machine, so far as necessary for the purposes of this case, is as follows: It is an iron frame fastened to the floor, about three and a half feet in height, and is equipped with four heads or tool holders, into which are fitted or fastened various shaped knives to surface different sized moldings.   These heads are each separately operated by individual belts, and some of them are shifted and adjusted by the operator, by loosening a bolt or set-screw, to the dimensions required by the different sized moldings.   The heads are blocks of iron or steel, about eight inches long and four inches square, into which are set the knives.   They are attached to short vertical or horizontal shafts, on the other ends of which are pulleys, on which are the belts running to the power pulley, and that in turn is operated by a large belt revolving around the overhead main shaft.   They are located in different places

on the frame, some toward the outer side thereof and some toward the center. The latter are called the inside heads, and revolve on the upper end of a vertical shaft, with the belt and pulley on the lower end. The inside head in question revolved around the shaft at the rate of 3,400 revolutions per minute. After plaintiff had operated this machine a short while he attempted to shift the inside head while it was revolving, by loosening the bolt with a wrench, so as to adjust it for shaping a strip of lumber, when, as he testifies, the belt running the bottom head caught the sleeve of his left arm between the elbow and wrist, threw his hand against the knives, and injured it in the manner already described.

The negligence charged was (1) failure to instruct; (2) failure to properly and safely cover the .belts; and (3) failure to guard and inclose the knives.

The jury returned the following special verdict: (1) that the belt which ran the inside head of the molding sticker machine in question was so located as to be dangerous to defendant's employees in the discharge of their duties; (2) that such belt could have been securely guarded or fenced; (3) that the knives in the inside head of the machine in question were so located as to be dangerous to defendant's employees in the discharge of their duties; (4) that the knives in said inside head of the machine in question could have been securely guarded; (5) that defendant's foreman, Russell, on the day of the accident, directed plaintiff to put in the knives and set up the sticker machine in question; (6) that defendant was guilty of a want of ordinary care which was the proximate cause of plaintiff's injury; (7) that plaintiff was not guilty of a want of ordinary care which proximately contributed to his injuries; and (8) damages $5,625.

From a judgment entered upon such verdict the defendant appealed.

For the appellant there was a brief by *Harper & McMynn,* and oral argument by *R. N. McMynn.*

For the respondent there was a brief by *W. B. Rubin,* attorney, and *W. B. Rubin* and *H. B. Walmsley,* of counsel, and oral argument by *Mr. Rubin* and *Mr. Max Schoetz, Jr.*

VINJE, J.    The jury found that the belt which ran the *inside* head of the machine plaintiff operated was so located as to be dangerous to employees in the discharge of their duties.    The evidence is conclusive and undisputed that the belt which ran the *bottom* head was meant; and it is evident the jury were not misled by the use of the word *inside* instead of the word *bottom.*    The testimony was all directed to the one belt, hence the mistake in describing it became immaterial.    This belt was so located that when plaintiff attempted to adjust the inside head with the wrench it came within two or three inches of his sleeve, and there is evidence to show that it had a wobbly or up-and-down motion which may have brought it even nearer.    A rapidly revolving belt so located with reference to where employees are called upon to discharge their duties certainly presents a jury question as to whether or not it comes within the provisions of sec. 1636*j,* Stats. (1898), and is required to be securely guarded.    The finding of the jury that it did, rests upon sufficient evidence to sustain it.

The trial court evidently treated the knives of the head of the machine as coming within the provisions of the statute, if they were so located as to be dangerous to employees in the discharge of their duties.    This was error.    They are neither shafting nor gearing within the meaning of the statute, and are not required by it to be guarded.    *Schmitt v. Seefeld,* 139 Wis. 459, 121 N. W. 136.

Whether or not the knives were so located, irrespective of the statutory requirements, as to charge the master with the duty of guarding them because they were dangerous to employees in the discharge of their duties, was a question for the jury.    Since they were not required by the statute to be

guarded, it became a question for the jury, even though they should have been guarded, to find whether or not plaintiff assumed the risk of their unguarded condition.    The defendant asked to have the question of the assumption by plaintiff of the risk resulting from the unguarded condition of the knives submitted to the jury, but the court refused the request.    It could not, therefore, be deemed to have found such issue in favor of plaintiff under the provisions of sec. 2858m, Stats. (Laws of 1907, ch. 346), by ordering judgment in his favor.    The result is, we have finding 1 by the jury establishing actionable negligence on the part of the defendant, and finding 3 establishing nonactionable negligence on its part—there being no finding that plaintiff did not assume the risk.    The only question relating to proximate cause is the sixth one, which reads: Was defendant guilty of a want of ordinary care which was the proximate cause of plaintiff's injury?    The trial court construed the jury's answer to this question as finding the negligence set out in questions 1 and 3 to be the proximate cause of the injury.    Such construction, we think, is the only reasonable one that can be given this verdict.    If this construction be given it, the jury found actionable negligence and nonactionable negligence on the part of the defendant to be the proximate cause of plaintiff's injury.    Such a finding does not sustain a judgment in his behalf.    *Peck v. Baraboo,* 141 Wis. 48, 122 N. W. 740.    It was suggested by counsel for plaintiff upon oral argument that an additional ground of negligence, namely, a failure to warn plaintiff of the danger of the uncovered knives, was found in the sixth question.    We are unable to reach that conclusion.    The instructions on the question relate solely to the abstract definition of burden of proof, ordinary care, and proximate cause.    They do not even remotely suggest any new or additional ground of negligence, and, as before stated, the trial court did not understand that any additional ground of negligence was found in answer to the question.

Moreover, the evidence would not sustain a finding that defendant was negligent in failing to warn plaintiff of the danger of the revolving uncovered knives.   So we have a case where it appears upon the face of the verdict that the proximate cause of the injury is found to be both actionable and nonactionable negligence on the part of the defendant.   This lacks an affirmative finding that defendant's *actionable* negligence was the proximate cause of plaintiff's injury—an essential element in every special verdict in a negligence case. We cannot eliminate from proximate causation the nonactionable any more than we can the actionable negligence. All we can say is that the verdict lacks a specific finding that the defendant's *actionable* negligence was the proximate cause of the injury complained of, and that, as stated in *Peck v. Baraboo, supra,* is a fatal defect.   Indeed, this verdict does not in terms declare that the negligences found in answer to questions 1 and 3 constitute the proximate cause of the injury to plaintiff.   Trial courts in submitting special verdicts should be careful to so frame the question relating to proximate cause that any responsive answer thereto will disclose what actionable negligence on the part of defendant does, or does not, constitute the proximate cause of plaintiff's injury.

It is urged by defendant that plaintiff was guilty of contributory negligence as a matter of law in attempting to adjust the head while it and the belts were in motion.   There is evidence that he was instructed by the superintendent or foreman to do so, and that other employees customarily did it with the parts in motion.   In view of such evidence and of plaintiff's age and experience, as shown by the testimony, we think the question of his contributory negligence was for the jury, and that their finding upon it should not be disturbed.

The verdict absolving plaintiff from contributory negligence cannot be construed as a finding that he did not assume the risk resulting from the unguarded revolving knives.   Especially is this so in view of the fact that the instructions

given under that question related only to the burden of proof and the definition of ordinary care. Not a word was said about the assumption of any risk whatever. The statute (sec. 1636$j$) also clearly distinguishes between contributory negligence and the assumption of risk in cases of this kind by permitting the one to constitute a defense and the other not, where it applies.

Plaintiff was a minor, about eighteen years of age. There was no evidence in the case to show an emancipation, and yet the trial court instructed the jury that they might allow for diminished earning capacity from the time of the injury instead of from the time of his majority. It is true that in the case of *Sharon v. Winnebago F. Mfg. Co.* 141 Wis. 185, 124 N. W. 299, the court held a charge substantially similar not prejudicial error in that case. As there must be a reversal here on other grounds, it is not necessary to decide whether or not the instruction alone constituted ground therefor. Attention, however, is called to the error so that it may not recur if the case be tried again. It appears from defendant's brief, not contradicted by plaintiff, that an action is now pending between the father of the plaintiff and the defendant to recover for loss of his son's services during minority. Manifestly the defendant should not be compelled to pay both the father and the son for the diminished earning capacity of the latter during minority.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.