BRATONJA, Appellant, vs. CITY OF MILWAUKEE, Respondent.
GAUS, Special Administratrix, Appellant, vs. SAME, Respondent.
HOFFMAN, Appellant, vs. SAME, Respondent.
BECKER and another, Appellants, vs. SAME, Respondent.

*January 8—February 4, 1958.*

For the appellants there was a brief by *Joseph N. Futowsky* and *Albert Gould,* attorneys, and *Arlo A. McKinnon* of counsel, all of Milwaukee, and oral argument by *Mr. McKinnon* and *Mr. Gould.*

For the respondent the cause was submitted on the brief of *Walter J. Mattison,* city attorney, and *George A. Bowman, Jr.,* and *Harvey G. Odenbrett,* assistant city attorneys.

WINGERT, J. The appeals are founded on the contentions that the sewer was inadequate to carry away the rainfall when built in 1906, that it became more inadequate as the years went by and more and more buildings were built in the area, thus increasing the fraction of the rainfall that ran down the street and collected in the low point, that the city had notice for many years that by reason of such inadequacies plaintiffs' properties were flooded from time to time, and that the rainfall of July 27, 1949, was not extraordinary in amount or in rapidity of fall. It is urged that the city's failure to install an adequate sewer in the first place, and particularly its failure to supplement the sewer or increase its capacity after notice of its inadequacy, constituted negligence, and that the inadequate sewer was a nuisance, for which negli-

gence and nuisance the city is liable notwithstanding the doctrine of municipal immunity.

In our view these legal contentions are not well founded, and the trial court was right in dismissing the complaints.

For present purposes we may accept as true the propositions that the sewer has at all times been inadequate to carry away all of the water running in the street after ordinary heavy rains, and that the damage to plaintiffs' properties resulted from the inadequacy. Such inadequacy alone does not give rise to a cause of action in favor of persons whose property is flooded by excess water not carried away by the sewer. On that point these cases are ruled by *Peck v. Baraboo,* 141 Wis. 48, 122 N. W. 740, in which this court had before it a similar case, and in a very thorough opinion by Mr. Justice TIMLIN reviewed the earlier cases and laid down principles which are fatal to the contentions of the present appellants.

In the *Peck Case,* the jury's special verdict, as interpreted by the court, established that the flooding damage resulted from the inadequacy of the sewer to carry away all of the water which collected in the street as a result of the heavy but not extraordinary fall of rain. On that state of facts, the court held that the city was not liable for the damages resulting from the inadequacy of its sewer. It pointed out that a municipality, in improving its streets, has the same right to obstruct or divert the existing flow of surface water that an individual has in improving his land; a principle we have recently recognized in *Laur v. Milwaukee,* 1 Wis. (2d) 561, 565, 85 N. W. (2d) 349, as well as in earlier cases. *Freeman v. Lake Mills,* 243 Wis. 537, 539, 11 N. W. (2d) 181; *Leininger v. County Highway Committee,* 217 Wis. 61, 64, 258 N. W. 368. Thus the city is not obligated to build a sewer at all, or to build one large enough to carry away all the water in the street as a result of even ordinary rainfall. *Peck v. Baraboo,* 141 Wis. 48, 52, 53, 122 N. W. 740. Moreover,

"A municipality, after it has made provision by a drain or sewer for carrying off surface water, may discontinue or abandon the drain or sewer if the landowners are thereby left in no worse condition with reference to the surface water set back than if the sewer had never been constructed. *Waters v. Bay View,* 61 Wis. 642, 21 N. W. 811. If the municipality may omit this intentionally, it may omit it negligently without incurring any liability." (141 Wis. at p. 53.)

On the other hand, it was recognized that—

"If the city first collect surface water in a sewer or drain and thereafter, by reason of negligent construction or maintenance of the sewer or drain, allow it to escape upon land adjacent to the sewer, the city will be liable for the damage caused thereby." (141 Wis. at p. 52.)

The court concluded its discussion of the law with the following statement of the decision:

"The instant case presents upon the pleadings, verdict, and finding no question of liability for discharging upon the land of the respondent surface water accumulated in a pond or reservoir, nor of allowing surface water to escape from a negligently defective sewer after the corporation has taken the water into the sewer and assumed the carrying of it to the place of discharge. On the contrary, there is no liability shown, because in line with the cases herein cited a municipal corporation cannot be held in damages by a landowner for changing the natural flow of and increasing the volume of surface water by the construction of streets and gutters, nor because the sewer was inadequate by reason of negligence in adopting plans in the first place, or by reason of negligently failing to maintain the sewer in good working order thereafter, to carry off the surface water so accumulating as fast as it accumulated." (141 Wis. at p. 55.)

We cannot find that *Peck v. Baraboo, supra,* has ever been discredited in this state. On the contrary, it was quoted with approval as recently as *Gibeau v. Pratt,* 256 Wis. 617, 620, 42 N. W. (2d) 286. In other states there is a conflict of

authority on the question here in issue, with many cases on each side. 18 McQuillin, Mun. Corp. (3d ed.), p. 480, sec. 53.123; Anno. 70 A. L. R. 1347.

No statute or Milwaukee charter ordinance has been cited to us, and we have found none, which renders the rule of *Peck v. Baraboo, supra,* inapplicable to the present cases.

Appellants cite *Geuder, Paeschke & Frey Co. v. Milwaukee,* 147 Wis. 491, 133 N. W. 835, and *Hart v. Neillsville,* 125 Wis. 546, 104 N. W. 699, in support of their contentions, but those decisions are readily distinguishable. In *Geuder, Paeschke & Frey Co.* an overloaded sewer burst because of a defect, and the water escaping from the sewer flooded plaintiff's basement. In *Hart v. Neillsville,* through a defect in the sewer the sewerage reversed its flow and backed up plaintiff's connecting pipe into his basement. Thus each of those cases falls within the exception recognized in *Peck v. Baraboo, supra,* that if the city first collects surface water in the sewer, and thereafter by negligent construction or maintenance, allows it to escape on adjacent land, the city may be liable. In short, the city is under no obligation to collect the rain water that may be in the street; but if it actually takes possession of such water and thereby assumes responsibility for it, it may be liable for subsequently permitting it to escape on adjoining property. *Trustees of University Co-operative Co. v. Madison,* 233 Wis. 100, 288 N. W. 742, falls in the same general class as the *Hart* and *Geuder, Paeschke & Frey Co. Cases, supra,* and is similarly distinguishable from the instant case.

The pleadings and evidence in the present cases bring them within the rule of *Peck v. Baraboo, supra,* rather than the exception exemplified by *Hart v. Neillsville, supra,* and *Geuder, Paeschke & Frey Co. v. Milwaukee, supra.* The complaints in all four cases allege only the inadequacy of the sewers to carry off all the water. In the *Bratonja* and *Gaus Cases,* there is affirmative testimony that the offending water

was running or standing in the street and came up over the sidewalk and in the plaintiffs' front door in large quantity. Plaintiffs Hoffman and Becker and Juedes alleged in their verified complaints that the vicinity "was inundated by water resulting from rainfall, and that the property of plaintiffs was immersed in floodwaters to the extent of approximately five feet above the street level." Only Becker and Juedes (a partnership) offered any evidence that any part of the water which caused the damage came from the sewer. Becker testified that having had trouble with water in the basement in 1942, they plugged up the drain with an expansion plug, to keep the water from backing up out of the sewer, and thereafter had no trouble until the rain of July 27, 1949, when "it bursted everything, it bursted the sewer pipe, it bursted the concrete floor, it raised it up two feet and our boiler." In view of the allegation of their complaint that their property was immersed in floodwater five feet above the street level, and Becker's further testimony that the water came up 32 inches in the first floor of the building, this testimony as to the burst pipe does not negative the fact that the major damage resulted from surface water which had never entered the sewer. Having failed to prove what part if any of their damage resulted from the backing up of the water in the sewer, as contrasted with that from the flooding by surface water, they failed to make a case for recovery, even assuming that the city would have been liable for the result of the bursting sewer pipe. *Geuder, Paeschke & Frey Co. v. Milwaukee*, 147 Wis. 491, 501, 505, 133 N. W. 835.

Appellants' contention, founded on their amended complaints, that the inadequacy of the sewer constituted an actionable nuisance, cannot prevail. Passing over the city's objection that such an amendment was not proper after the statutory period of limitations had expired, we think that in the circumstances the designation "nuisance" is a mere label, adding nothing to the case asserted on the basis of

negligence. Under the rule of *Peck v. Baraboo, supra,* the facts do not establish liability on the part of the city, and that rule cannot be escaped by calling the condition a nuisance. See the discussion in the recent case of *Wisconsin Power & Light Co. v. Columbia County,* ante, p. 1, 87 N. W. (2d) 279.

From what has been said it follows that the judgments for the city must be affirmed. Since the cases fall within the doctrine of *Peck v. Baraboo,* it is unnecessary to review the finding of the trial court that the rainfall of July 27, 1949, was extraordinary.

*By the Court.*—Judgments affirmed.