Roger and Donna ANHALT, Floyd W. (dec'd) and Sharon J. Bartlett, James and Lynn Batzner, Larry J. and Lori A. Bubb, Anna Castellan, Johnand Libi Churchill, Richard and Kristine Cvetan, Allan J. and Linda K. Dekker, Ralph and Jill Dekker, Kevin S. and Gail M. Dickfoss, Mary Ann Dickfoss, Edwin L. and Joyce Fritz, Donald and Gloria Gerk, Ronald and Judy Glaeser, John and Patricia Green, Kevin and Andrea Haen, Herbert and Edna Heiden, James and Cathy Kehn, Eugene and Gail Kissinger, David and Bonnie Krom, Allan and Barbara Krueger, Karen Lardinois, Richard and Shirley Ledeboer, Peter J. and Mary E. Loewen, Mary Mannchen, Thomas R. and Madelyn Y. Mlada, Joan B. Pittner, Frank and Carol Race, Karl F. Riem, Marion Russell, Leroy and Sandy Seefeldt, Jeffrey A. and Jane H. Shea, Allen and Marsha L. Sherven, John and Carol Sneen, Scott and Julie Thomas, Raymond L. Uphoff, Michael E. and Jana L. Wagner, David and Kim Warden and Thomas W. and Kathryn E. Zummallen, Plaintiffs-Appellants,†

v.

CITIES AND VILLAGES MUTUAL INSURANCE COMPANY and City of Sheboygan, Defendants-Respondents,

† Petition to review filed.

GENERAL CASUALTY INSURANCE COMPANY, Sentry Insurance Company, State Farm Insurance Company, Farmers Insurance Company, Allstate Insurance Company and Kemper Insurance Company, Defendants.

Sharon L. KUNSTMAN, n/k/a Sharon L. Romenesko, Donald, Marion and Lori Ladiges, James and Kathleen Saladino, J.C. and Julie Schultz, Patricia J. Swoboda and Douglas and Patricia Wrensch, Plaintiffs-Appellants,

v.

CITIES AND VILLAGES MUTUAL INSURANCE COMPANY and City of Sheboygan, Defendants-Respondents,

SENTRY INSURANCE COMPANY, Safeco Insurance Company and Sheboygan Falls Mutual Insurance Company, Defendants.

Ashton E. WICK, D.D.S as trustee and income beneficiary of the Ashton E. Wick Trust and Ashton E. Wick Trust, Plaintiffs-Appellants,

v.

CITIES AND VILLAGES MUTUAL INSURANCE COMPANY and City of Sheboygan, Defendants-Respondents,

PRINCIPAL LIFE INSURANCE COMPANY, Defendant.

Court of Appeals

*No. 00–3551. Oral Argument August 14, 2001.—Decided October 24, 2001.*

2001 WI App 271

(Also reported in 637 N.W.2d 422.)

66

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of and oral argument by *Randall L. Nash* of *O'Neil, Cannon & Hollman, S.C.* of Milwaukee.

On behalf of the defendants-respondents Cities and Villages Mutual Insurance Company and City of Sheboygan, the cause was submitted on the brief of *Joseph J. Voelkner* and *James O. Conway* of *Olsen, Kloet, Gunderson & Conway* of Sheboygan. There was oral argument by *James O. Conway*.

Before Nettesheim, P.J., Brown and Snyder, JJ.

¶ 1. BROWN, J. Eighty residents of the City of Sheboygan appeal from an order granting summary judgment to the City. The residents, representing forty-six properties, brought this action against the City after sustaining substantial damage of their homes and personal property due to flooding. The residents allege that the City is responsible for the flooding based on claims of: (1) negligence, (2) private nuisance, (3) inverse condemnation, (4) waste, and (5) deprivation of property in violation of 42 U.S.C. § 1983 (2001). We conclude that summary judgment was proper as to all theories of liability and affirm.

¶ 2. The residents live in an area of Sheboygan served by the Second Creek storm sewer system. The City engineer's office designed the sewer system that was approved and implemented by the City of Sheboygan in 1944.

¶ 3. Following abnormally heavy rainstorms in 1986, the City of Sheboygan authorized a study of the

68

Second Creek sewer system by McMahon Associates, Inc. The McMahon Associates' report evaluated the system for conveying stormwater drainage under 5–year, 10–year, and 100–year return frequency rainfall events. The rains of 1986 were 100–year and in excess of 100–year return frequency events according to the McMahon report. Yet, the 1–year original design criteria were adequate to convey the runoff from a 2–year return frequency rainfall event. The report concluded that "[t]he current system can handle an event with a 2–year return frequency and perhaps slightly more but cannot handle a 5–year return frequency event. . . . This also helps explain why there is a chronic flooding problem." Extensions onto the Second Creek system continued to use the 1–year recurrence event criteria that was currently in use.

¶ 4. The City authorized a second study of the Second Creek system in 1988. This study, conducted by Donahue & Associates, utilized documentation from the McMahon report and made further recommendations to the City regarding the sewer system. In particular, it recommended implementing improvements for 100–year recurrence interval flood protection for the area served by the Second Creek system.

¶ 5. After these studies were completed, the City entered into easements with several of those residents being served by the Second Creek system. These easements granted the City the right "to construct, install, maintain, and repair a storm sewer . . . including constructing, changing, repairing, controlling and removing said storm sewer." In return for the granting of the easement, "[i]t is understood . . . that the [City of Sheboygan] shall be responsible for any wrongful or negligent act or omission of the [City] or its agents or employees in the course of their employment."

¶ 6. The area served by the Second Creek system continued to be subject to flooding.[1] On August 6, 1998, there was an unusual and abnormally heavy rain in the City of Sheboygan. The destruction to personal and real property is well documented in the record. In some instances, the foundations of homes collapsed inward, with basement walls giving way causing the earth to slide into the basements. In one case, the home collapsed entirely.

¶ 7. The residents commenced this litigation following the August 1998 rain event. As we noted, the claims against the City include negligence, private nuisance, inverse condemnation, waste, and violation of 42 U.S.C. § 1983. The trial court ordered summary judgment in favor of the City on the grounds that the design and approval of the sewer system is a legislative function protected by governmental immunity.

---

[1] The City continued to hire consultants to address the recurring flooding problems. In 1996, Rust Environment and Infrastructure examined the sewer system and concluded, "much of the city's storm sewer system is undersized." It also found that "there are numerous nuisance drainage problems through the city that need to [be] addressed over time." The report suggested requiring developers to build detention basins that "release the runoff from a 100–year storm at a 2–year runoff rate. This is an accepted practice for communities with existing flooding problems."

In 1999, Earth Tech reviewed the Second Creek system and observed that it has a number of landlocked areas that do not have the capacity to handle large or intense rain events. Earth Tech recommended expanding the existing pond (by a factor of about six) and constructing a new storm sewer system that will collect storm water runoff from the landlocked areas. It suggested that ponds be designed to take the 100–year runoff rates and release it at a 10–year rate.

### *Standard of Review*

■■■■■

¶ 8. The review of a grant or denial of summary judgment is de novo, using the same methodology as the trial court. *M&I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 496, 536 N.W.2d 175 (Ct. App. 1995). Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2) (1999–2000).[2] We will uphold a decision granting summary judgment unless the record reveals that one or more genuine issues of material fact are in dispute or the moving party is not entitled to judgment as a matter of law. *Strasser v. Transtech Mobile Fleet Serv., Inc.*, 2000 WI 87, ¶ 30, 236 Wis. 2d 435, 613 N.W.2d 142.

### *1. Negligence*

¶ 9. The thrust of the residents' negligence claims is that the City failed to design, construct, maintain and operate a storm sewer system with sufficient capacity to drain storm water. They also assert that the City was negligent in failing to follow the recommendations of their consultants who advised implementing a system to handle a 100–year storm event. In support, the residents offer the affidavit of an engineer, William Painter, who avers that had the City adhered to the recommendations made in the Donahue report, the homeowners would not have suffered property damage as a result of the rainfall in 1998.

¶ 10. The City responds that even if these allegations are true, the City is immune from liability because

---

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

the acts of designing, planning and implementing a sewer system are legislative acts protected under the doctrine of governmental immunity. The City further argues that, contrary to the assertion of the residents, the easements do not expressly waive governmental immunity.

¶ 11. The doctrine of governmental immunity is stated in WIS. STAT. § 893.80(4):

> No suit may be brought against any [governmental entity] or any agency thereof for the intentional torts of its officers, officials, agents, or employees nor may any suit be brought against such [governmental entity] . . . or against its officers, officials, agents, or employees for acts done in the exercise of legislative, quasi-legislative, judicial, or quasi-judicial functions.

The terms legislative, quasi-legislative, judicial and quasi-judicial are collectively referred to as discretionary acts. *Envirologix Corp. v. City of Waukesha*, 192 Wis. 2d 277, 288, 531 N.W.2d 357 (Ct. App. 1995). Thus, a governmental body is immune from suit when the act complained of is discretionary as opposed to merely ministerial. The doctrine of immunity affords no protection for ministerial acts. *Id.* at 288–89.

¶ 12. We are persuaded by *Allstate Insurance Co. v. Metropolitan Sewerage Commission of the County of Milwaukee*, 80 Wis. 2d 10, 258 N.W.2d 148 (1977), that the acts of designing, planning and implementing a sewer system are discretionary acts protected under WIS. STAT. § 893.80(4). In *Allstate*, insurance companies sued governmental entities for contribution alleging negligent placement of a manhole in the sewer system.

72

*Allstate*, 80 Wis. 2d at 13. The court held that the governmental entities had discretionary immunity, stating:

> We conclude that the decisions of the Metropolitan Commission in planning and designing the system in question, including the placement of the manhole, were legislative acts. ... Where, when and how to build sewer systems are legislative determinations imposed upon a governmental body. It is not for the court to be judge or jury to "second guess" them in these determinations nor to find they are liable for negligence.

*Id.* at 15–16 (footnotes omitted). We find this language to be dispositive and conclude that the City's decision to implement and maintain a sewer system with a capacity to handle only a 1–year storm event is protected by the doctrine of immunity. Furthermore, its refusal to adopt the plans recommended by its consultants is also a legislative determination that is immune from liability.[3]

### a. Waiver

¶ 13. The residents respond that easements drafted by the City in 1988 contain language that

---

[3] Even before enactment of Wis. Stat. § 893.80(4), case law indicates that governmental entities were immune from liability for implementing inadequate storm sewer systems. In *Bratonja v. City of Milwaukee*, 3 Wis. 2d 120, 87 N.W.2d 775 (1958), business owners alleged that the City was negligent for failing to install an adequate sewer "in the first place, and particularly its failure to supplement the sewer or increase its capacity after notice of its inadequacy." *Id.* at 122–23. Accepting such inadequacy as true, the court nonetheless affirmed dismissal of the suit, observing that "[s]uch inadequacy alone does not give rise to a cause of action in favor of persons whose property is flooded by excess water not carried away by the sewer." *Id.* at 123.

waives any governmental immunity with respect to the City's negligent implementation and maintenance of the Second Creek sewer system. The storm sewer easements provided the City with rights of access and in addition stated: "It is understood in the granting of this easement that the [City] shall be responsible for any wrongful or negligent act or omission of the [City] or its agents or employees in the course of their employment."

¶ 14. In *Grall v. Bugher*, 181 Wis. 2d 163, 511 N.W.2d 336 (Ct. App. 1993), *rev'd on other grounds,* 193 Wis. 2d 65, 532 N.W.2d 122 (1995), we observed that waiver of governmental immunity must be clear and express. "It is well established that the sovereign's immunity from suit can be waived only by express language: 'the state's consent to suit many not be implied: it must be clear and express.' " *Id.* at 172 (citation omitted). While that case was decided in the context of express legislative permission to sue, we apply its reasoning here. It is clear to us that the language in the easements contains no express waiver of immunity. Read in context, the plain language simply expresses the City's willingness to be liable for negligent acts occurring during the work allowed by the easements. It waives immunity, for example, with respect to the negligent trenching and laying of pipes, but not for the overall planning and design decisions of the sewer system. Certainly, the easements do not waive the discretion of the City to adopt recommendations of hired consultants. Because the residents do not allege any negligent acts with respect to the installation of the storm sewer pipes but only with respect to the original design and refusal to follow the consultants' advice, we

conclude that this decision is protected by the City's immunity and is not waived by the easements.[4]

¶ 15. Finally, the residents assert that municipal immunity attached to the planning and design of the sewer system should not persist in view of changed conditions that demonstrate a dangerous condition exists. Here, the residents contend that the City had notice of the undersized sewer system and did not correct the problem. We should conclude, according to the residents, that the plan that was reasonable at the time of construction became unreasonable over time and lost its immunity.

¶ 16. In *Allstate*, we questioned, without deciding, whether a municipality has a duty to review its legislative determination after notice that a dangerous condition exists. *Allstate*, 80 Wis. 2d at 16 n.5. Our review of Wisconsin case law has uncovered no precedent for the

---

[4] Only thirty-four of the residents, representing nineteen of the properties involved in this action, were subject to the easements. The other residents claim to be third-party beneficiaries of the storm sewer easements based on the theory that they are members of the class that the parties intended to benefit. Because we conclude that the easement agreements pertain only to actual construction of the sewer and there is no evidence of negligent construction demonstrating breach of these agreements, their status as third-party beneficiaries is moot.

In addition, the residents argue that "[n]o immunity ever existed to protect the City from liability for its breach of contract. When the claim against a city is based on contract there is no immunity." We doubt, based on our review of the record, that this issue was ever fully presented to the trial court. Nevertheless, our conclusion that there is no evidence that the agreements were breached renders this issue also moot.

position that a municipality has a positive duty to keep its sewer system current with developing needs.[5] As we have already noted, the conception of the original plan for designing and installing the sewer system was an exercise of official judgment. Whenever, thereafter, serious flooding began to appear, governmental judgment and discretion had to be exercised with respect to whether and how to remedy the situation. The rising cost of providing a remedy compared to other exigencies facing the City are fiscal determinations for responsible city officials to make. While the decision to refuse to implement a 100–year storm event system has become increasingly untenable, it is nonetheless an exercise of legislative judgment and discretion. The remedy for the residents, therefore, lies in their power to vote rather than in the judicial system.

### b. Governmental Immunity for City Engineer

██

¶ 17. The residents submit that under *Scarpaci v. Milwaukee County*, 96 Wis. 2d 663, 292 N.W.2d 816 (1980), an exception to governmental immunity exists

---

[5] There appears to be a minority rule applied in some jurisdictions that a municipality may be liable if it fails to keep pace with increasing demands upon its sewer system. *Barney's Furniture Warehouse of Newark, Inc. v. City of Newark*, 303 A.2d 76, 82 (N.J. 1973). More frequently, however, it is held that a municipality will not be liable because of subsequent inadequacy occasioned by development and increased demands upon the sewer system. *Id.* While we express our approval of the majority view, we adhere to the principle that a municipality may be liable if the operation of the sewer system expels artificially collected sewage, whether sanitary, storm or both, into a homeowner's residence or onto his or her land. *Id.*; *Bratonja*, 3 Wis. 2d at 123–25.

when the conduct involves the performance of professional skills. *Scarpaci* involved a medical doctor's performance of an autopsy. The court held that immunity does not extend to medical decisions of medical personnel employed by a governmental body. *Id.* at 686–88. No case has yet extended the exception in *Scarpaci* to professionals outside the medical field. *See Kierstyn v. Racine Unified Sch. Dist.*, 228 Wis. 2d 81, 97–98, 596 N.W.2d 417 (1999). We are not inclined to apply the exception to the city engineer in this case. Whether or not he is a "professional" for purposes of the exception, he had no decision-making authority for the design and installation of the Second Creek sewer system. Absent the exercise of independent professional discretion, any acts of the city engineer involved governmental discretion and are protected by immunity.

## 2. Private Nuisance

¶ 18. The residents assert that the City created and maintained a private nuisance, an action that is not protected by governmental immunity. Nuisance is a material and unreasonable impairment of the right of enjoyment or the individual's right to the reasonable use of his or her property or the impairment of its value. *Costas v. City of Fond du Lac*, 24 Wis. 2d 409, 414, 129 N.W.2d 217 (1964). A nuisance may exist with or without negligence. *Walley v. Patake*, 271 Wis. 530, 541, 74 N.W.2d 130 (1956).[6] The residents principally rely on *Menick v. City of Menasha*, 200 Wis. 2d 737, 547 N.W.2d

---

[6] Nuisance and negligence are different kinds of torts. To constitute a nuisance, "the wrongfulness must have been in the acts themselves" whereas negligence is based on the "failure to use the requisite degree of care doing them." *Bell v. Gray-Robinson Constr. Co.*, 265 Wis. 652, 657, 62 N.W.2d 390 (1954).

778 (Ct. App. 1996), for the proposition that the maintenance and operation of a sewer system in a manner that causes damage to homeowners is a nuisance that does not fall within the immunity provisions of Wis. Stat. § 893.80(4). At this point, it is instructive to review the prominent cases that apply the law of nuisance to hold municipalities liable for damages resulting from the operation of sewage systems.

¶ 19. In *Winchell v. City of Waukesha*, 110 Wis. 101, 85 N.W. 668 (1901), the City installed a sewer system that emptied into a river flowing out of the City and past the plaintiff's farmhouse. As the volume of sewage increased, the stench caused great discomfort and illness. *Id.* at 104. Using language often quoted in more recent cases, the court reasoned that the "great weight of authority . . . supports the view that legislative authority to install a sewer system carries no implication of authority to create or maintain a nuisance, and that it matters not whether such nuisance results from negligence or from the plan adopted." *Id.* at 109.

¶ 20. More recently, in *Hillcrest Golf & Country Club v. City of Altoona*, 135 Wis. 2d 431, 400 N.W.2d 493 (Ct. App. 1986), the City's sewer system collected rain water and then discharged it through a culvert onto Hillcrest's land. *Id.* at 434. Subsequent soil erosion prevented the use of the land as a golf course. We relied on *Winchell* to hold that Hillcrest's pleadings stated a claim in private nuisance because they alleged a unique injury depriving it of the reasonable use of its property. *Hillcrest*, 135 Wis. 2d at 441.

¶ 21. *Menick* involved facts similar to those presented here. After Menick's basement was twice flooded by the City's sewer system, she brought suit alleging private nuisance and inverse condemnation. *Menick*,

200 Wis. 2d at 741. We relied on *Hillcrest* in concluding that the City could not claim immunity against the assertion of private nuisance. *Menick,* 200 Wis. 2d at 745. Nevertheless, we affirmed summary judgment against her because she failed to meet the burden of proving that the flooding resulted from the negligence of the City. *Id.* at 748–49. In particular, she provided no expert testimony to advance her theory that the City's negligent acts caused the backup rather than unprecedented rainfall. *Id.* "While there is no dispute that the City's sewer system was the conduit for sewage to enter Menick's residence, that fact does not satisfy the requirement that the City's actions are the *legal cause* of the backup." *Id.* at 748.

¶ 22. In the case before us, the residents claim that they offer the evidence that was lacking in *Menick*. They offer affidavits to show the City was aware of chronic flooding problems, had hired consultants who recommended improvements to the Second Creek system and then failed to implement those improvements. Notably, they offer Painter's expert opinion that the City's failure to follow recommendations made in the 1988 Donahue report caused property damage that could have been avoided.

¶ 23. For our purposes we will accept as true the proposition that the sewer system has for many years been inadequate to drain storm water and that damage to the residents' properties resulted from this inadequacy.[7] Nevertheless, we determine based on our re-

---

[7] The record indicates that the Second Creek sewer system has experienced flooding since 1963, at about which time residential expansion within the watershed exceeded the sewer system drainage area for which it was designed in 1944.

view of the case law that such inadequacy alone does not give rise to a cause of action in nuisance. This principle was clearly set forth in *Bratonja v. City of Milwaukee*, 3 Wis. 2d 120, 87 N.W.2d 775 (1958). In that case, business owners who experienced flooding after heavy rainfall alleged negligence and nuisance on the part of the City for failing to install and maintain adequate sewer facilities to carry away the water. *Id.* at 122. As in the case before us, in *Bratonja* the City had implemented improvements that apparently did not keep up with development in the area served by the sewer system. *Id.* at 121. The court pointed out that a municipality, in improving its streets, has the same right to obstruct or divert the existing flow of surface water that an individual has in improving his or her land. *Id.* at 123. It follows then, the court observed, that a "city is not obligated to build a sewer at all, or to build one large enough to carry away all the water in the street as a result of even ordinary rainfall." *Id.* The exception to this rule is where the City first collects surface water in the sewer, and thereafter by negligent construction or maintenance, allows it to escape onto adjacent land. *Id.* at 124. In other words, the City was not liable for damage resulting from surface water that had never entered the sewer.

¶ 24. We summarize the holding of *Bratonja* as follows: the City is under no obligation to collect the rainwater that may accumulate in the street, but if it takes possession of the water and assumes responsibility for it, the City may be liable in nuisance for subsequently discharging the water onto adjoining property. This principle endures in the case law. *See Tiedeman v. Vill. of Middleton*, 25 Wis. 2d 443, 452, 130 N.W.2d 783 (1964) ("[A] city may not collect water in a body and then cast it on the land in a large volume."). It

also allows us to harmonize the results in *Winchell* and its progeny with our holding in the case before us.

¶ 25. In *Winchell*, the court upheld an action in nuisance where the City collected and channeled raw sewage directly into a stream that flowed past the plaintiff's farm. *Winchell*, 110 Wis. at 112. These facts clearly indicate *Winchell* was not about inadequate capacity but about collected water intentionally discharged in an unreasonable manner, thereby creating a nuisance. An injunction was upheld against the City even though the system was operating as designed and was not negligently constructed. *Id.* at 110. Therefore, *Winchell* falls within the exception explained in *Bratonja*. Similarly, *Hillcrest* involved the collection and discharge of water from the sewer onto the plaintiff's land. *Hillcrest*, 135 Wis. 2d at 434. This is another "collected water" case and falls within the exception.

¶ 26. *Menick*, unlike *Hillcrest* and *Winchell*, was a nuisance action grounded in negligence. *Menick*, 200 Wis. 2d at 747. The residents in this case also ground their claim of nuisance in negligence, asserting negligent operation and failure to maintain an adequate system. In order to prevail on this theory, they must show that the system itself failed due to negligence. The record demonstrates the opposite is true. The city engineer was on site during the unprecedented rainfall and confirmed that the sewer and the pumps were working. None of the expert testimony offered by the residents contradicts this evidence. As in *Menick*, we conclude that "[g]iven the undisputed facts, a jury could properly infer that the heavy rains alone resulted in an overload of the system." *Id.* at 749.

¶ 27. In the absence of negligence, a plaintiff could still allege nuisance by claiming an unreasonable activity that substantially interferes with the comfort-

81

able enjoyment of the life, health, or safety of the person. WIS JI—CIVIL 1920. To prevail in the context of this case, the residents would have to show that this is a "collected water" case: that the flood waters were diverted from the sewer system onto their private property. There is no evidence of this in the record. Instead, the affidavits show that most of the damage resulted from water collecting on the surface when it was unable to drain through the sewer system. Under these facts, a jury could not conclude that the municipality was operating the sewer system so as to create or maintain a nuisance. *See* WIS JI—CIVIL 1922.

### *3. Inverse Condemnation*

¶ 28. The residents claim the City has taken their property without just compensation in violation of WIS. STAT. § 32.10 and related constitutional provisions. Inverse condemnation is the name commonly used to describe an action commenced by a property owner to recover for an alleged uncompensated taking by a public body. *Hillcrest*, 135 Wis. 2d at 435 n.1. Article I, section 13 of the Wisconsin Constitution reads, "[t]he property of no person shall be taken for public use without just compensation therefor." Furthermore, WIS. STAT. § 32.10 provides in part:

> If any property has been occupied by a person possessing the power of condemnation and if the person has not exercised the power, the owner, to institute condemnation proceedings, shall present a verified petition to the circuit judge of the county wherein the land is situated asking that such proceedings be commenced. . . . The court shall make a finding of whether the defendant is occupying property of the plaintiff without having the right to do so.

¶ 29. To be a taking under WIS. STAT. § 32.10, the flooding must constitute an actual, permanent invasion of the land. In *Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 428 (1982), the United States Supreme Court observed:

> [T]his Court has consistently distinguished between flooding cases involving a permanent physical occupation, on the one hand, and cases involving a more temporary invasion . . . . A taking has always been found only in the former situation. . . . [T]o be a taking, flooding must "constitute an actual, permanent invasion of the land, amounting to an appropriation of, and not merely an injury to, the property." (Citations omitted.)

¶ 30. Relying on this language in *Loretto*, we held in *Menick*, 200 Wis. 2d at 743, that where flooding subsides and waters recede, there was no permanent physical occupation of the plaintiff's land and no governmental taking. We find *Menick* controlling in this case. The residents counter that those plaintiffs whose homes were destroyed or who had a wall of their home collapse have suffered a taking distinguishable from the typical temporary flooding case. They assert that the permanent loss in value of real property is a taking. However, it is the character of the invasion, not the amount of damage resulting from it, that determines whether a taking has occurred. *See United States v. Cress*, 243 U.S. 316, 328 (1917). Mere damage is not compensable under article I, section 13 of the Wisconsin Constitution. *Menick*, 200 Wis. 2d at 744.

¶ 31. The residents contend that this case should be governed by *Hillcrest*, in which we found that the plaintiff stated a cause of action for inverse condemna-

tion. In *Hillcrest*, the City implemented a sewer system which collected rain water that had previously evaporated or percolated harmlessly into the soil. *Hillcrest*, 135 Wis. 2d at 434. The collected water was then discharged through a culvert and onto Hillcrest's golf course. *Id.* Hillcrest alleged that the sewer system caused soil erosion rendering the land unfit for use as a golf course. *Id.* The residents assert that in this case, like *Hillcrest*, the sewer sytem led to flooding and soil erosion, which denied the owners' the beneficial use of their properties as residential homes. We determine that this case is factually more similar to *Menick* than *Hillcrest*. The key distinguishing fact in *Hillcrest* is that it was the City's operation of the sewer system, its act of discharging water it had collected onto Hillcrest's property, that constituted a physical occupation rising to the level of a taking. *See Hillcrest*, 135 Wis. 2d at 436 (noting municipality's *actions* denied landowner beneficial use of its land as a golf course). The residents point to no similar municipal action in this case that deprived them of the use of their homes. Because there was no actual discharge, as in *Hillcrest*, but overflow due to heavy rains, as in *Menick*, we conclude that the inverse condemnation claim must fail.

¶ 32. Finally, the residents claim that under *Zinn v. State*, 112 Wis. 2d 417, 334 N.W.2d 67 (1983), even a temporary taking is compensable. In *Zinn*, a ruling from the Department of Natural Resources caused the title to a portion of the plaintiff's land to be transferred to the State. *Id.* at 421. Later, the DNR ruling was overturned. The court found that this legal restriction placed on the ownership of the property constituted a compensable taking. *Id.* at 426–27. However, in this case, the residents have made no showing that the City imposed a legally enforceable restriction that resulted

in damage to their property. While the damage is substantial and undisputed, it was not occasioned by any legal restriction such as a zoning requirement or a condition attached to a pêrmit. *See Howell Plaza, Inc. v. State Highway Comm'n*, 92 Wis. 2d 74, 88, 284 N.W.2d 887 (1979) ("A taking can occur absent physical invasion only where there is a legally imposed restriction upon the property's use.").

¶ 33. Therefore, whether the residents claim a permanent or temporary taking, they cannot prevail in the absence of any imposed legal restrictions or physical occupation by the City.

### 4. Waste

¶ 34. The residents claim that the City has committed waste to their property by virtue of the City's ownership and control over the sewer system.

¶ 35. Wisconsin law defines "waste" as "the unreasonable conduct by the owner of a possessory estate that results in physical damage to the real estate and substantial diminution in the value of the estates in which others have an interest." *Pleasure Time, Inc. v. Kuss*, 78 Wis. 2d 373, 381, 254 N.W.2d 463 (1977). Thus, a claim of waste rests on the opposing party having a possessory interest in the property. The residents contend that the City, as holder of the easements, has such a possessory interest. However, the residents cite to no case law in support of this position. Moreover, our review of legal authorities demands a contrary conclusion.

¶ 36. An easement is "[a]n interest in land owned by another person, consisting in the right to use or control the land, or an area above or below it, for a

specific limited purpose . . . . [A]n easement may last forever, but it does not give the holder the right to possess, take from, improve, or sell the land." BLACK'S LAW DICTIONARY 527 (7th ed. 1999). Similarly, the Restatement clarifies that "[a]n easement creates a non-possessory right to enter and use land in the possession of another and obligates the possessor not to interfere with the uses authorized by the easement." RESTATEMENT (THIRD) OF PROPERTY: SERVITUDES § 1.2 (2000). Alternatively, the residents assert that whether the holder of an easement has a possessory interest is a mixed question of fact and law and therefore for a jury to decide. We conclude as a matter of law, however, that the limited right to maintain and construct a municipal sewer system is not equivalent to a possessory interest in property. Absent the possessory interest, the claim for waste fails.

### 5. Remedy Under 42 U.S.C. § 1983

¶ 37. Finally, the residents claim a violation of federal constitutional rights under 42 U.S.C. § 1983. A claim under this section has two components: a federal constitutional basis and an assertion of an inadequate state remedy. *Menick*, 200 Wis. 2d at 743. The residents' claim fails as to both components.

¶ 38. The constitutional basis for the residents' claim is a violation of their equal protection rights. They claim that using different design criteria for different areas in the City is "arbitrary and unreasonable, having no substantial relation to the public health, safety or general welfare." We reject this argument. The fact that the City implements different design standards in various parts of the City does not create any inference of an intent to discriminate or that

it has acted irrationally. Moreover, the fact that some residents of the City experience no flooding while others experience chronic flooding does not raise an inference that the City provides unequal services to its residents.

¶ 39. In addition, the residents cannot reasonably claim a lack of state law remedies available to them. While we have determined that their state law claims lack merit, this cannot be construed as an absence of state law remedies. *See id.* at 743–44. Therefore, the residents' 42 U.S.C. § 1983 claim fails.

¶ 40. Based on the foregoing analysis, we affirm the order of the trial court granting summary judgment in favor of the City.

*By the Court.*—Order affirmed.