James R. WELCH and Linda L. Welch, Plaintiffs-Appellants,†

v.

CITY OF APPLETON and ABC Insurance Company, Defendants-Respondents.

Court of Appeals

*No. 02–3259–FT. Submitted on briefs March 28, 2003.—Decided May 28, 2003.*

2003 WI App 133

(Also reported in 666 N.W.2d 511.)

† Petition to review denied 10-1-03.

On behalf of the plaintiffs-appellants, the cause was submitted on the brief of *Charles D. Koehler* and *Herrling, Clark, Hartzheim & Siddall Ltd.*, of Appleton.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Christopher R. Behrens*, assistant city attorney, of the City of Appleton.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J.[1] James and Linda Welch appeal a summary judgment granted to the City of Appleton. The trial court concluded that the City was entitled to governmental immunity under Wis. Stat. § 893.80(4) after an overflowing sewer caused the Welches' home to collapse to a point requiring total demolition. The Welches contend that the City created a nuisance and was negligent, breaching its ministerial duty to maintain the sewer. Both of the Welches' theories, if correct, preclude applying the immunity doctrine. The Welches also claim there are genuine issues of material fact to be resolved. While we sympathize with the Welches' situation, we reject their arguments and affirm the judgment.

## Background

¶ 2. The Welches owned a home in Appleton. A City storm sewer runs under their property and at the time of this incident, a vertical drain pipe with an open grate was located approximately fifteen feet from the house's rear foundation. Sometime in 1995, the City extended the height of the pipe at the Welches' request.

¶ 3. On June 11, 2001, the City experienced an extraordinary rainstorm. At the peak of the storm's intensity, two inches of rain fell in ten minutes. There was so much water in the system that the resulting pressure created a twenty-foot geyser from the City's pipe in the Welches' yard. The geyser lasted about thirty minutes. Because the ground sloped downward from

---

[1] This is an expedited appeal under Wis. Stat. Rule 809.17. All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

the pipe toward the house, the water naturally pooled against the foundation causing it to collapse, and bringing down most of the house as well. The collapsed home was irreparable and had to be demolished, although the site was re-excavated and the house rebuilt.

¶ 4. Following the event, the City sealed the pipe with concrete and relocated the drain on the property to an area of lower elevation than the home. The sewer system was also evaluated, but the City found no obstructions and all mechanical components were in working order.

¶ 5. The Welches sued the City, claiming that the City maintained a nuisance and that it was negligent.[2] The City moved for summary judgment on grounds of governmental immunity in WIS. STAT. § 893.80(4). The court determined that the City was not liable for damages caused if the sewer "lacks the capacities under a single-event storm. . . . The single-event episode is an exceeding-the-capacity case. The law says that governmental immunity applies to such a case." The court accordingly granted the City summary judgment. The Welches appeal.

### Discussion

■

¶ 6. We review a summary judgment decision using the well-known methodology that the circuit court also employs. *See Policemen's Annuity & Benefit Fund v. City of Milwaukee*, 2001 WI App 44, ¶ 9, 246 Wis. 2d 200, 630 N.W.2d 236; *Green Spring Farms v. Kersten*,

---

[2] There were also allegations before the trial court that the City was maintaining the sewer without a valid easement and that the City had engaged in a taking. However, those issues are not before us on appeal.

136 Wis. 2d 304, 314–15, 401 N.W.2d 816 (1987). Whether immunity applies is a question of law that we resolve without deference to the trial court. *Caraher v. City of Menomonie*, 2002 WI App 184, ¶ 9, 256 Wis. 2d 605, 649 N.W.2d 344.

¶ 7. WISCONSIN STAT. § 893.80(4) states:

No suit may be brought against any . . . political corporation, governmental subdivision or any agency thereof for . . . intentional torts . . . nor may any suit be brought against such corporation, subdivision or agency . . . for acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.[3]

## I. Maintaining a Private Nuisance

¶ 8. The Welches first point out that the immunity doctrine is not a shield against a nuisance claim. This is correct—no statutory or common law immunity doctrine empowers a public body to maintain a private nuisance. *Hillcrest Golf & Country Club v. City of Altoona*, 135 Wis. 2d 431, 441, 400 N.W.2d 493 (Ct. App. 1986). However, the Welches' argument assumes that the sewer was a private nuisance. We conclude that it was not.

¶ 9. The legal basis for a nuisance claim is a question of law we review without deference to the trial court. *Stunkel v. Price Elec. Co-op.*, 229 Wis. 2d 664, 668, 599 N.W.2d 919 (Ct. App. 1999). In *Menick v. City*

---

[3] Legislative, quasi-legislative, judicial, and quasi-judicial functions are collectively termed "discretionary acts." *See Anhalt v. Cities & Villages Mut. Ins. Co.*, 2001 WI App 271, ¶ 11, 249 Wis. 2d 62, 637 N.W.2d 422. Discretionary acts are the opposite of ministerial acts, discussed later in this opinion.

*of Menasha*, 200 Wis. 2d 737, 547 N.W.2d 778 (Ct. App. 1996), we repeated the criteria for a private nuisance claim. A plaintiff must demonstrate that the "actor's conduct is a legal cause of the invasion [by] showing that: (1) the invasion is intentional and unreasonable, or (2) unintentional and otherwise actionable under the rules governing liability for negligent, reckless, or ultrahazardous conduct." *Id.* at 747 (citation omitted). In *Menick*, as here, there is no allegation that the City's conduct was intentional.

¶ 10. We therefore turn to the second prong of the nuisance test. The Welches argue that under this standard, they can maintain a nuisance claim against the City if they can show the City (1) negligently operated and failed to maintain an adequate sewer system or (2) by its actions unreasonably and substantially interfered with the Welches' comfortable life, health, or safety. *See Anhalt v. Cities & Villages Mut. Ins. Co.*, 2001 WI App 271, ¶¶ 26–27, 249 Wis. 2d 62, 637 N.W.2d 422.

## A. Negligent Operation and Maintenance

¶ 11. Establishing negligence requires proof of causation. *Menick*, 200 Wis. 2d at 747. The plaintiff in *Menick* could not meet that burden, *id.* at 748, but the Welches claim they have. Regarding the operation and maintenance of the sewer, the Welches contend their expert, engineer John Davel, has offered proof of several ways in which the city was negligent. Davel contends that: (1) the ponding in the Welches' backyard was foreseeable; (2) flooding was foreseeable because the system was designed for a ten-year event at best; (3) the pipe in the Welches' yard could have been capped or relocated in 1995; (4) the lack of a safety valve may have

contributed to the flood; and (5) the City should have done an evaluation of the water's escape plan in 1995.

¶ 12. In *Anhalt*, however, we clarified the proof required, stating that to prevail on the negligent operation and maintenance theory, the plaintiffs "must show that the system itself failed due to negligence." *Id.*, ¶ 26. There we concluded that the record did not so demonstrate but, rather, "The city engineer . . . confirmed that the sewer and the pumps were working." *Id.* We have the same situation in this case. The City's engineer averred that the system's components were functioning normally both before and after the storm. The system's problem was not mechanical. Rather, it was simply unable to keep pace with the extraordinary rainfall.

¶ 13. The Welches do not dispute that the sewers tested in working order. Moreover, they acknowledge that "during a heavy rainstorm, the storm sewer became surcharged with pressure *causing* storm water to exit the manhole drain . . . ." (Emphasis added.) Yet they argue that Davel's opinions constitute "conflicting evidence regarding the cause of the problem . . . ." Davel, however, has not proven that the existing system failed. He has only provided different design specifications.[4] Approval of the design and construction of a sewer system are generally discretionary acts. *See Menick*, 200 Wis. 2d at 745. *But, cf., Bratonja v. City of Milwaukee*, 3 Wis. 2d 120, 123–24, 87 N.W.2d 775

---

[4] As to the contention that the ponding was foreseeable, we are persuaded by the City's argument that ponding is always foreseeable if one contemplates the appropriate circumstances, such as a 100–year storm event. Moreover, suggesting the City should have installed a system to handle more than a ten-year event is akin to suggesting a new design.

(1958). Even if the system is poorly designed, a municipal government is immune for this discretionary act. *See Anhalt*, 249 Wis. 2d 62, ¶ 12 (city installed one-year storm sewer and knew that it was likely to flood annually, but still had immunity) (quoting *Allstate Ins. Co. v. Metropolitan Sewerage Comm'n*, 80 Wis. 2d 10, 15–16, 258 N.W.2d 148 (1977)).[5]

### B. Unreasonable or Substantial Interference

██

¶ 14. Absent a showing of negligence, a plaintiff could still allege nuisance by claiming the City engaged in an unreasonable activity that substantially interfered with the comfortable enjoyment of the life, health, or safety of the plaintiffs. *Anhalt*, 249 Wis. 2d 62, ¶ 27. To prevail in the context of this case, the Welches would have to show that this is a collected water case; in other words, that the flood waters were diverted from the sewer system onto their private property. *See id.*

¶ 15. Here, the trial court concluded that this was not a collected water case, but an "exceeding-the-capacity" case. While such a determination may generally be viewed as a factual issue, and potentially inappropriately determined on a summary judgment motion, we conclude as a matter of law that this case is an "exceeding-the-capacity" case and not a collected water case. Because of the sparse jurisprudence defin-

---

[5] Assuming we might conclude that the Welches made an inadequate showing, they invite us to remand to allow Davel to complete his analysis of the information he obtained. However, the Welches should have asked the trial court to postpone its summary judgment hearing if they needed more time to analyze evidence. By not requesting an extension, they have not preserved the right to request one now.

ing "collected water" and "exceeding-the-capacity" cases, we deem it appropriate to further discuss the issue.

¶ 16. The Welches emphasize that the sewer system *collected* the surface water and then *diverted* or discharged it onto their property. Their argument appears to be that any time a sewer gathers water and discharges it elsewhere it is a collected water case. An exceeding-the-capacity case, however, is one where the sewer is simply incapable of draining all the water from the ground surface, leaving the surface water to cause damage.

¶ 17. There are no formal definitions for either collected water or exceeding-the-capacity cases. However, our review of the case law leads us to conclude that collected water cases involve an element of the sewer's design, either intentionally or negligently included, that regularly diverts the sewer's water load to a resident's private property. There is no evidence that this design element exists in this case.

¶ 18. In *Bratonja*, the supreme court held that a "city is not obligated to build a sewer at all, or to build one large enough to carry away all the water in the street as a result of even ordinary rainfall." *Bratonja*, 3 Wis. 2d at 123. However, if the City first collects the water in the sewer and thereafter, by negligent construction or maintenance allows it to escape onto adjacent land, the City may be liable. *Id.* at 124. Thus, *Bratonja* created an exception to the general rule of immunity for sewer design.

¶ 19. We recently summarized this holding in *Anhalt*, where we wrote: "the City is under no obligation to collect the rainwater that may accumulate in the street, but if it takes possession of the water and

assumes responsibility for it, the City *may* be liable in nuisance for subsequently discharging the water onto adjoining property." *Anhalt*, 249 Wis. 2d 62, ¶ 24 (emphasis added). Both cases state that the City *may* be liable, not that it *will* be liable, so we must determine under what circumstances the City is liable; that is, when may a case be termed a collected water case.

¶ 20. In *Winchell v. City of Waukesha*, 110 Wis. 101, 85 N.W. 668 (1901), the City's sewer system emptied into a river that passed Winchell's property. As the volume of sewage increased, the stench caused illness. Thus, we concluded in *Anhalt* that *Winchell* involved the *intentional* and unreasonable discharge of sewage into the river, not the capacity of the system. *See Anhalt*, 249 Wis. 2d 62, ¶ 25. More recently, in *Hillcrest*, the city system collected rainwater, discharging it through a culvert onto the club's property causing erosion. *Hillcrest*, 135 Wis. 2d at 434. Both cases fit into the *Bratonja* exception—collecting water and allowing it to escape with regularity, intentionally or negligently, onto adjacent land permits the trial court to find liability for the system design.

¶ 21. By contrast, in *Menick*, one of the plaintiff's arguments was that she should be allowed to proceed under the theory of res ipsa loquitur because it was undisputed that the City's sewer was the conduit through which her home flooded. *Menick*, 200 Wis. 2d at 748. Essentially, the Welches argue the same thing. We declined to allow Menick to proceed on that theory because she could not show the city had done anything to constitute the legal cause of the flood. *Id.*

¶ 22. In both *Winchell* and *Hillcrest*, the design of each city's system perpetually moved the water from the system and past or through the plaintiff's land, not just during a heavy rain or flood event. In *Menick*, as

here, the sewer water would not, *under normal circumstances,* invade the private property. The Welches do not contend otherwise. The cities took care in designing their sewers to avoid creating such a nuisance and invasion. Indeed, as the trial court noted, "this was the only time that the [Welches] had ever experienced drainage problems." The fact that during an unforeseen and irregular rainstorm, the otherwise fully operational sewer could not process the falling water fast enough resulting in a back-up within the system does not make this a collected water case.

## II. Negligent Performance of a Ministerial Duty

¶ 23. The Welches alternatively argue that the City is not entitled to immunity because it failed to fulfill a ministerial duty. WISCONSIN STAT. § 893.80(4) only immunizes against actions done in fulfilling discretionary duties. A duty is ministerial "only when it is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister v. Board of Regents,* 72 Wis. 2d 282, 301, 240 N.W.2d 610 (1976). Or, as clarified in *C.L. v. Olson,* 143 Wis. 2d 701, 715, 422 N.W.2d 614 (1988), a public officer's duty is ministerial only where "the nature of the danger is compelling and known to the officer and is of such force that the public officer has no discretion not to act."

¶ 24. The Welches contend that after the City elevated the pipe in their yard in 1995, it had a ministerial duty to maintain the pipe so it would not

700

discharge water onto the Welches' property. Maintenance of sewers so as not to cause injury is generally considered ministerial compared to the discretionary decision relating to design or implementation of a system. *See Menick*, 200 Wis. 2d at 745.

¶ 25. Here, there was no required pipe "maintenance." WEBSTER'S THIRD NEW INT'L DICTIONARY 1362 (unabr. 1993) defines the verb "maintain" as, most appropriately, "to keep in a state of repair." It is undisputed that both before and after the storm the system was working.

¶ 26. Moreover, the "maintenance" of lengthening the pipe in 1995 was done at the Welches' request.[6] They wanted to create a more gradual slope to their yard, and the pipe apparently had to be extended to fit into the slope. We decline to hold that the City's discretionary act of accommodating the Welches' landscaping concerns subsequently bound the City to a ministerial duty.

¶ 27. While the Welches suggest the City had a duty to maintain the system so as not to discharge onto their property, they are essentially arguing that the City poorly designed the sewer. That is not a question of maintenance: Design of a sewer is discretionary, subject only to the *Bratonja* exception that is inapplicable here. Tragic as the circumstances are, a party cannot work backward from an adverse consequence to create

---

[6] The City submitted an affidavit from a worker affirming that the Welches made this request. The Welches did not file a reply brief to rebut this assertion by the City, and thus they have admitted the extension was done at their request. *See Charolais Breeding Ranches v. FPC Secs. Corp.*, 90 Wis. 2d 97, 109, 279 N.W.2d 493 (Ct. App. 1979) (An opponent's argument not refuted is deemed admitted.).

a duty that is "absolute, certain and imperative." *Kimps v. Hill*, 200 Wis. 2d 1, 12, 546 N.W.2d 151 (1996).

¶ 28. The Welches further argue that there is the same factual dispute underlying this negligence claim as there was in the nuisance claim. Relying on the same argument—Davel's opinions—they write, "As addressed *supra*, the Welchs have provided expert testimony which indicates that the Defendant's conduct was the cause of . . . their injuries." We may decline to address arguments that simply incorporate earlier portions of a brief. *See Calaway v. Brown County*, 202 Wis. 2d 736, 750–51, 553 N.W.2d 809 (Ct. App. 1996). However, we rejected the argument above on its merits and reject it here on the merits as well. Davel's testimony only provides suggestions for better designs, not proof that the City caused the loss.

¶ 29. As indicated, we sympathize with the damages the Welches suffered. However, there is nothing in the record to show that the City maintained a nuisance in the sewer or failed to perform a ministerial duty in maintaining the sewer.

*By the Court.*—Judgment affirmed.