Thomas G. BUTLER, Mary J. Butler,
Steven J. Grundahl, Nancy J. Grundahl,
James A. Gallop, Maureen Gallop, Greg
Kittelsen, Edith Kittelsen, Duane Schwartz,
Joan Schwartz, Dewey Mullikin,
Juanita Mullikin, Helen Brekke, Phillip Jones,
Susan Jones, Allen Hall, Florence Hall,
Michael Singer, Noel Singer, H. James Jacobsen,
Debby Jacobsen, Scott Blanck, Dana Blanck and
Larry Kinney and Karen Kinney,
Plaintiffs-Appellants,†

Albert KEMPF, Pat Kempf, Dale E. Johnson,
Joan L. Johnson, Harold M. Flolid, Karen A.
Flolid, Carolyn Ousdigian, Ted Ousdigian,
Jeremy Ferris, June Ferris, Suzanne Meland,
Michael T. Meland, Estate of Maxine Lenz,
Daryl Erdman, Audrey Erdman, Lawrence J.
Jarvela, Patricia D. Jarvela, Joann Yohn,
Stephen Yohn, Jerry Greeley, Karen Greeley,
Niel R. Petersen, Marlys J. Petersen, Karen Ek,
Bill Ek, Charles Peterson, Douglas J. Gallop,
Shirley Gallop, Mike Evavold, Mark R. Parks,
Art Kosieradzki, Jeanne Kosieradzki,
Gary C. Boyum, Eleanor Kay Boyum and
Beverly Gallop and Bud Gallop,
Intervening-Plaintiffs-Appellants,†

---

† Petition to review granted 9-8-05.

Thomas E. Ferris and Joy Linda Ferris,
Intervening-Plaintiffs,

v.

Advanced Drainage Systems, Inc., Daniel Kling and
ECG, Inc., Defendants-Respondents,

City of Shell Lake,
Defendant,

Cincinnati Insurance Company and Gulf
Underwriters Insurance Company,
Intervening-Defendants-Respondents,

Bob Thompson & Sons
and Thompson Sand & Gravel,
Defendants-Third-Party Plaintiffs-Respondents,

v.

Hoffman Construction Company and Wausau
Insurance Companies,
Third-Party Defendants-Respondents.

Court of Appeals

No. 2004AP1991. *Submitted on briefs February 10, 2005.
—Decided April 26, 2005.*

2005 WI App 108

(Also reported in 698 N.W.2d 117.)

780

On behalf of the plaintiffs-appellants and intervening plaintiffs-appellants, the cause was submitted on the briefs of *Steven B. Goff* and *Tracy N. Tool, Bye, Goff & Rohde, Ltd.*, River Falls; and *Matthew A. Biegert* and *Michael J. Brose, Doar, Drill & Skow, S.C.*, New Richmond.

On behalf of the defendants-respondents, the cause was submitted on the briefs of *William J. Katt* and *Mark D. Malloy, Leib & Katt, S.C.*, Milwaukee, and *Thomas J. Graham, Jr.* and *Christine A. Gimber, Weld, Riley, Prenn & Ricci, S.C.*, Eau Claire.

On behalf of the intervening defendant-respondent Cincinnati Insurance, the cause was submitted on the brief of *Mark Rattan* and *James P. Odda, Litchfield Cavo*, Brookfield.

On behalf of the defendants-third-party plaintiffs-respondents and third-party defendants-respondents, the cause was submitted on the brief of *J. David Rice, Rice, Heitman & Davis, S.C.*, Sparta; *Patrick H. O'Neill, Jr., O'Neill & Murphy, LLP*, St. Paul, MN; and *Timothy J. Muldowney, LaFollette Godfrey & Kahn*, Madison.

Before Vergeront, Lundsten and Higginbotham, JJ.

¶ 1. VERGERONT, J. This appeal arises out of a project undertaken by the City of Shell Lake to divert water from Shell Lake in order to lower the water level.

782

The owners of property abutting the lake sued the City and others involved in the project, alleging that the project failed due to negligence and their property was damaged as a result. The circuit court granted summary judgment in favor of certain defendants who had worked on the project, respondents on this appeal, concluding that no evidence showed a basis for their liability to the property owners, and, alternatively, that public policy considerations precluded liability.

¶ 2. The property owners appeal the summary judgment.[1] We conclude that RESTATEMENT (SECOND) OF TORTS § 324A is the appropriate framework for analyzing the respondents' liability for negligence and, based on the undisputed facts, we conclude the respondents are entitled to judgment because none of the three alternative conditions for liability under § 324A has been met. We also conclude that, because the nuisance claim is based on allegedly negligent conduct and there is no liability for negligence under *Milwaukee Metropolitan Sewerage District v. City of Milwaukee*, 2005 WI 8, 277 Wis. 2d 635, 691 N.W.2d 658, there is also no liability for nuisance. Accordingly, we affirm the circuit court's dismissal of the negligence and nuisance claims.

## BACKGROUND

¶ 3. Many of the background facts are not disputed for purposes of this appeal. Shell Lake is a 2580 acre landlocked lake located in Washburn County, Wisconsin. There are approximately 433 residential

---

[1] The property owners also appeal the circuit court's orders denying their motion for class certification and granting the respondents' motion for change of venue. We do not address these issues because we affirm the summary judgment.

properties abutting the lake. For a number of years the water level in Shell Lake has been rising, with the result that it has reached the foundations of many of the buildings around the lake and covers much of the yards of many shoreline properties. The City made several attempts to alleviate the high water problems in the 1980's and 1990's, but none resolved the problem.

¶ 4. In June 2001, the City applied to the Department of Natural Resources (DNR) for a permit to place structures on the bed of the lake and on the bed of the Yellow River in order to divert water from the lake to the river. The DNR approved the application and issued the permit. The project called for constructing and installing a drainage pipe along an approximately 4.5 mile route from Shell Lake to the Yellow River. The project was estimated to cost more than 1.6 million dollars, funded in part by special assessments in the amount of $650,000 to be paid by the property owners.

¶ 5. The City entered into several contracts for work on the project: with ECG, Inc.[2] for design and engineering; with Advanced Drainage System, Inc. for supplying the pipes; and with Bob Thompson & Sons and Thompson Sand & Gravel (collectively Thompson)[3] for the installation and general contracting. When the pipeline was opened for the first time in November 2002, leaks developed immediately and it was shut down for repair. ECG, Advanced Drainage, and Thomp-

---

[2] The correct name of ECG, Inc. is Envirosystems Consulting Group, Inc., but we use the designation in the caption to avoid confusion.

[3] Thompson filed a third-party complaint against a subcontractor, Hoffman Construction Company. On the summary judgment motion and on this appeal, Thompson and Hoffman have filed joint briefs, so we do not refer separately to Hoffman.

son worked on repairs until June 2003, starting up the pipeline a number of times and, each time, having to shut it down again for further repairs.

¶ 6. While those repairs were being made, the City hired another engineering firm to evaluate the pipeline. This firm's report, issued in May 2003, concluded that the pipeline failed to perform as intended due to defects in the design of the pipeline and defects in the materials, manufacturing, and installation of the pipes, either individually or in combination. The report also made various recommendations to repair the pipeline. Eventually the City decided to "slipline" the existing pipe, that is, put a new pipe inside the existing pipe. After this modification, the pipeline began operating in November 2003.

¶ 7. Meanwhile, shortly after the report was issued, the owners of thirteen properties abutting Shell Lake filed this action, seeking certification of a class of persons owning property abutting the lake.[4] The complaint alleged that ECG,[5] Advanced Drainage, and Thompson were negligent in their work on the project and their negligence was "a substantial factor in the failure to curb and reverse the rising water level," causing damage to the property of the named plaintiffs and the proposed class. The complaint also alleged that

___

[4] Another group of owners of additional properties abutting the lake were granted permission to intervene as plaintiffs. For purposes of this appeal, any distinction between the two groups of plaintiffs is irrelevant, and we include both in our references to "property owners."

[5] The complaint also named Daniel Kling as a defendant, alleging that he was the principal of ECG. It is unnecessary on this appeal to refer to Kling separately from ECG, except when we later discuss his deposition testimony.

the actions of those three defendants, along with the actions of the City and the DNR, resulted in a nuisance.[6]

¶ 8. Thompson moved for summary judgment on both the negligence and nuisance claims, and the other defendants joined in the motion. As to negligence, they argued two alternative theories. First, they contended that, because their contract was with the City and not with the property owners, they were not liable to the property owners unless the criteria in RESTATEMENT (SECOND) OF TORTS § 324A were met; and, they asserted, the property owners had submitted no evidence entitling them to a trial on whether those criteria were met. Second, they argued that, based on the undisputed facts, public policy precluded finding them liable. As to the nuisance claim, Thompson contended that not relieving a naturally occurring interference with the owners' use and enjoyment of their property did not, as a matter of law, constitute a nuisance.

¶ 9. The circuit court granted the motion and dismissed both claims. Regarding the negligence claim, the court decided that both an analysis under RESTATEMENT (SECOND) OF TORTS § 324A and public policy supported dismissal.

## DISCUSSION

¶ 10. On appeal, the property owners contend that the court erred in dismissing the negligence claim for three reasons: (1) under negligence law in Wisconsin, ECG, Advanced Drainage, and Thompson (the

---

[6] Additional claims were alleged against the City and the DNR that are not relevant to this appeal.

respondents)[7] owed a duty to the property owners to exercise due care and there is evidence they breached that duty; (2) even if RESTATEMENT (SECOND) OF TORTS § 324A applies, there is evidence entitling them to a trial; and (3) the circuit court should not have considered public policy at this stage. On their nuisance claim, the property owners assert there are factual disputes that entitle them to a trial.

¶ 11. In reviewing the grant or denial of a summary judgment, we employ the same methodology as the circuit court and our review is de novo. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 315, 401 N.W.2d 816 (1987). The moving party is entitled to summary judgment if there are no genuine issues of material fact and that party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). When a defendant moves for summary judgment and its evidentiary submissions establish a prima facie basis for dismissal of the complaint, the plaintiff avoids summary judgment against it only by submitting evidence that, if believed, would entitle it to judgment. *Transportation Ins. Co., Inc. v. Hunzinger Const. Co.*, 179 Wis. 2d 281, 291, 507 N.W.2d 136 (Ct. App. 1993); WIS. STAT. § 802.08(3). In deciding whether there are genuine issues of material fact, we view the evidence most favorably to the non-moving party, drawing all reasonable inferences from the evidence in that party's favor. *Grams v. Boss*, 97 Wis. 2d 332, 339, 294 N.W.2d 473 (1980). Whether an inference is reasonable and whether particular evidence

---

[7] Cincinnati Insurance Company has also filed a respondent's brief on appeal. Cincinnati issued insurance polices to Thompson, and is proceeding separately on coverage issues. It is unnecessary on this appeal to refer separately to this respondent.

permits more than one reasonable inference are both questions of law, which we review de novo. *Hennekens v. Hoerl*, 160 Wis. 2d 144, 162, 465 N.W.2d 812 (1991).

I. Negligence

 A. *Is RESTATEMENT (SECOND) OF TORTS § 324A the Appropriate Framework for Determining the Respondents' Liability?*

¶ 12. In order to prevail on their negligence claim, the property owners must establish: (1) the existence of a duty of care on the part of the respondents; (2) a breach of that duty of care, (3) a causal connection between the respondents' breach of duty of care and their injury, and (4) actual loss or damage resulting from the injury. *Gritzner v. Michael R.*, 2000 WI 68, ¶ 19, 235 Wis. 2d 781, 611 N.W.2d 906. The parties' dispute centers on the first element, with the respondents implicitly conceding, for purposes of this appeal, that there is evidence supporting the second, third, and fourth elements. The determination of the existence of a duty in a negligence case is a question of law. *Stephenson v. Universal Metrics, Inc.*, 2002 WI 30, ¶ 15, 251 Wis. 2d 171, 641 N.W.2d 158.[8]

¶ 13. The property owners are correct that under Wisconsin law every person owes a duty to the world at

---

[8] There is no dispute between the parties that, because the respondents' contracts were with the City, not with the property owners, any claim the property owners have against the respondents must be in tort, not contract. There is also no dispute that a breach of those contracts, in itself, does not necessarily constitute a tort. *See Landwehr v. Citizens Trust Co.*, 110 Wis. 2d 716, 723, 329 N.W.2d 411 (1983).

large to refrain from conduct that could cause foreseeable harm to others, even though the identity of the person harmed has not been established at the time of the conduct. *Id.*, ¶ 16.

> Thus, when determining the existence of a duty, the primary question we ask is not whether the defendant has a duty to take (or refrain from) certain actions, but whether the defendant's actions (or lack thereof) were consistent with the general duty to exercise a reasonable degree of care under the circumstances.

*Id.*

¶ 14. RESTATEMENT (SECOND) OF TORTS § 324A (1965) provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect[9] his undertaking, if
>
> > (a) his failure to exercise reasonable care increases the risk of such harm, or
> >
> > (b) he has undertaken to perform a duty owed by the other to the third person, or
> >
> > (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

(Footnote added.)

¶ 15. In *Miller v. Bristol-Myers Co.*, 168 Wis. 2d 863, 883–84, 485 N.W.2d 31 (1992), the court explained that § 324A establishes both when an assumption of

---

[9] The use of the word "protect" is apparently a typographical error and should read "perform." *Miller v. Bristol-Myers Co.*, 168 Wis. 2d 863, 883 n.7, 485 N.W.2d 31 (1992).

duty arises and when there is liability for a breach of that duty. "The introductory portion establishes when an assumption of duty arises .... [T]he actor must: (1) undertake to render services, (2) to another, (3) which such actor should recognize as necessary for the protections of a third person." *Id.* at 883. Once an assumption of duty is shown, "the remaining portion of the introduction and subsections (a), (b), and (c) establish when liability for such an assumption of duty arises. Liability for the actor arises only if the actor failed to exercise ordinary care *and* the requirements of subsections (a), (b), or (c) are met." *Id.* at 884.

¶ 16. We are uncertain whether the property owners' position is that, because of the way in which Wisconsin law defines duty, it is improper to analyze the respondents' liability under § 324A, or whether their position is that § 324A is an alternative, but not required, framework for analyzing the respondents' liability. In either case, this question arises: what is the relationship between the formulation of duty under Wisconsin law and § 324A? To answer this question we turn to the supreme court's most recent discussion of the topic in *Stephenson,* 251 Wis. 2d 171.

¶ 17. In *Stephenson,* the court addressed, on review of a summary judgment, whether a person who said he would drive an intoxicated person home from a party, but failed to do so, was liable for the death caused by that intoxicated person while driving home. After explaining the approach to duty under Wisconsin law, which we have quoted in paragraph 13, the court considered whether § 324A should be used to determine if liability existed. 251 Wis. 2d 171, ¶ 17. The court concluded that § 324A should be used because the facts of the case "fit the § 324A framework"—that is, the defendant gratuitously undertook to drive the intoxi-

cated person home and recognized that as necessary to protect other persons. *Id.*, ¶ 19. In rejecting the defendant's argument that the application of § 324A was inconsistent with the principles of Wisconsin law on duty, the court reviewed prior cases that had applied the framework of § 324A and concluded: "As this court has applied it, the framework of § 324A comports with Wisconsin's principles of negligence law." *Id.*, ¶ 23. Referring to the case before it, the court stated that the defendant's agreement to drive the intoxicated person home "coupled with the later decision not to [do that] could be viewed as a failure to exercise reasonable care under the circumstances." *Id.*, ¶ 24.

¶ 18. Although the *Stephenson* court concluded that the framework of § 324A was appropriate on the facts of that case, it also concluded that two defenses were applicable: one was the argument that public policy precluded liability and the other is not relevant here. *Id.*, ¶ 25. Ultimately the court concluded that both defenses precluded liability. *Id.*, ¶ 52.

■

¶ 19. Our reading of *Stephenson* together with *Miller* leads us to the following conclusions. When a party proposes that § 324A should be applied to determine whether a defendant is liable for negligence, the court is to decide whether the facts of the case fit the portion of the introductory paragraph that pertains to the assumption of duty. If the court determines that the facts do fit, the defendant's liability is analyzed under § 324A, subject to a consideration of public policy factors and other defenses as may be applicable.[10]

---

[10] In this case, as in *Stephenson*, no specific framework for analyzing the defendants' liability other than RESTATEMENT

¶ 20. *Stephenson* is inconsistent with the property owners' position that § 324A is never the proper framework for analyzing a negligence claim in Wisconsin. The cases on which the property owners rely for this view are among those that the court in *Stephenson* discussed as appropriately applying § 324A in a manner consistent with Wisconsin law. *See, e.g., A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 483, 214 N.W.2d 764 (1974), and *American Mut. Liab. Ins. Co. v. St. Paul Fire & Marine Co.*, 48 Wis. 2d 305, 313, 179 N.W.2d 864 (1970) (both mentioned in *Stephenson*, 251 Wis. 2d 171, ¶¶ 23–24). *Stephenson* is also inconsistent with the proposition that the property owners may choose between § 324A and the general theory that the respondents have a duty to exercise a reasonable degree of care under the circumstances. If § 324A is the appropriate framework, then that establishes the parameters for the duty to exercise reasonable care under the particular circumstances, and it also imposes one of three conditions for liability, in addition to the requirement of failure to exercise reasonable care. *Miller*, 168 Wis. 2d at 884.

¶ 21. Based on our reading of *Stephenson*, then, the first inquiry is whether there is evidence to meet the criteria in the introductory paragraph of § 324A that pertain to the assumption of duty. The respondents contend there is, and the property owners do not disagree. We conclude that the evidence in this case does fit the criteria in the introductory paragraph of § 324A pertaining to the assumption of duty. It is undisputed that the respondents contracted with the City to perform, for consideration, certain services regarding the pipeline. Also, there is evidence that, if

(SECOND) OF TORTS § 324A was proposed. Our conclusions set forth in paragraph 19 are to be understood in that context.

viewed most favorably to the property owners, would permit a reasonable jury to find that when the respondents did so, they should have recognized the project was necessary to protect the properties abutting the lake from damage and should have recognized that these properties were owned by third persons, not by the City.

¶ 22. Because the evidence in this case meets the criteria in the introductory paragraph of § 324A pertaining to the assumption of duty, we conclude it is the appropriate framework within which to analyze the liability of the respondents to the property owners. The respondents are liable to the property owners if they failed to exercise reasonable care in performing their undertakings *and* if the conditions of one of the three subsections are met. *Miller*, 168 Wis. 2d at 884. As noted above, the respondents do not dispute that there is sufficient evidence of their failure to exercise ordinary care to preclude summary judgment on that issue. The parties' disagreement concerns whether the property owners are entitled to a trial under any one of the three subsections. We turn to that issue now.

B. *Is There Evidence Entitling the Property Owners to a Trial Under RESTATEMENT (SECOND) OF TORTS § 324A?*

1. Increased the Risk of Harm—§ 324A(a)

¶ 23. The increased risk alternative applies when the actor's "failure to exercise reasonable care increases the risk of [the resulting physical] harm." Subsection (a). The property owners contend that the respondents' failure to exercise due care increased the risk of harm because that failure allowed the water level to rise, whereas if they had exercised due care the water level

793

would have been lowered, resulting in less damage to their properties. This argument is premised on a comparison of the harm that resulted from failure to exercise due care to the harm that would have existed in the absence of that failure. The respondents contend that this is an incorrect construction of subsec. (a). According to the respondents, the proper construction is a comparison of the present situation to the situation that would have existed had the respondents not undertaken the project at all.

¶ 24. Although no reported Wisconsin case has specifically construed subsec. (a) on this point, the *Miller* decision provides guidance. *Miller* explains that, for there to be liability, there must be both "fail[ure] to exercise reasonable care in the undertaking *and* the requirements of subsections (a), (b), or (c) [must be] met." *Miller*, 168 Wis. 2d at 884. Under the property owners' construction, subsec. (a) does not add a condition for liability but is simply a repetition of the requirement that the actor's failure to exercise reasonable care has resulted in physical harm. Thus, *Miller* supports the respondents' construction because it adds an additional condition for liability, as do subsecs. (b) and (c).

¶ 25. The property owners argue that both *American Mutual* and *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 247 N.W.2d 132 (1976), support their position and that the respondents' interpretation of "increase the risk" is inconsistent with these cases. In both cases the court allowed a negligence action to proceed under § 324A, without discussing whether there was evidence that the conditions in either subsecs. (a), (b), or (c) were met. From the facts in each case, the property owners argue that there was no increased risk of harm in either case if that means an increase in harm compared to the

situation before the actor undertook to perform the services. However, we cannot reasonably read into the court's failure to discuss any of the three subsections a particular construction of subsec. (a). Moreover, to the extent either *American Mutual* or *Coffey* suggests that liability may exist under § 324A without one of the conditions in subsecs. (a)-(c) being met, we must follow the later case of *Miller*, 168 Wis. 2d at 884, which expressly rules to the contrary. *See Spacesaver Corp. v. DOR*, 140 Wis. 2d 498, 502, 410 N.W.2d 646 (Ct. App. 1987) (when two supreme court decisions appear to conflict, we follow the more recent one).

¶ 26. We next consider the comment and illustration to subsec. (a) and conclude that the illustration supports the respondents' construction. The comment uses the phrase "actor's negligent performance of his undertaking results in increasing the risk of harm," without further clarification. Section 324A cmt. c. However, the illustration accompanying the comment involves a situation in which an electrician comes to repair a defective electric light in a store and does that, but leaves the fixture so insecurely attached that it falls and injures a customer. In other words, the electrician increased the risk of harm to customers compared to that existing before the undertaking to repair the light. Section 324A cmt. c, illus.

¶ 27. Finally, we consider cases from other jurisdictions that have addressed this precise question. It appears that the majority of jurisdictions follow the approach taken by the Sixth Circuit in *Myers v. U.S.*, 17 F.3d 890, 903 (6th Cir. 1994), which holds: the "test is not whether the risk was increased over what it would have been if the defendant had not been negligent, [but whether] the risk is increased over what it would have been had the defendant not engaged in the undertaking

795

at all." *Id.* at 903.[11] The court in *Myers* explained its reasoning:

> This must be so because the preliminary verbiage in Section 324A assumes negligence on the part of the defendant and further assumes that this negligence caused the plaintiff's injury. If we were to read subsection (a) as plaintiffs suggest, i.e., that [liability] exists where the negligence increased the risk over what it would have been had the defendant exercised due care, [liability] would exist in every case. Such a reading would render subsections (b) and (c) surplusage and the apparent purposes of all three subsections to limit application of the section would be illusory.

*Id.*

---

[11] Cases following *Myers* include: *Thames Shipyard & Repair Co. v. U.S.*, 350 F.3d 247, 261 (1st Cir. 2003); *Ayala v. U.S.*, 49 F.3d 607, 614 (10th Cir. 1995); *Hanakahi v. U.S.*, 325 F. Supp. 2d 1125, 1138 (D. Haw. 2002); *Matthews v. U.S.*, 150 F. Supp. 2d 406, 414 (E.D.N.Y. 2001); *Andrew v. State*, 682 A.2d 1387, 1392 (Vt. 1996*). See also* the following cases stating the same proposition as *Myers*, but not citing *Myers*: *Canipe v. National Loss Control Serv. Corp.*, 736 F.2d 1055, 1062 (5th Cir. 1984); *Patton v. Simone*, 626 A.2d 844, 850–51 (Del. Super. 1992); *Deines v. Vermeer Mfg. Co.*, 752 F. Supp. 989, 994–95 (D. Kan. 1990); *Ricci v. Quality Bakers of America Coop. Inc.*, 556 F. Supp. 716, 720 (D. Del. 1983); *Blessing v. U.S.*, 447 F. Supp. 1160, 1197 n.53 (E.D. Pa. 1978); *Alder v. Bayer Corp., AGFA Div.*, 61 P.3d 1068, 1078 (Utah 2002); *Paz v. State of California*, 994 P.2d 975, 981 (Cal. 2000); *Vaughan v. Eastern Edison Co.*, 719 N.E.2d 520, 525 (Mass. App.Ct. 1999); *Redmon v. Stone*, 667 N.E.2d 526,528 (Ill. App.Ct. 1996). *But see Clay Elec. Coop. Inc. v. Johnson*, 873 So.2d 1182, 1187 (Fla. 2003) (concluding over objection that there was a jury question whether the electric company's negligence in maintaining the street lights increased the risk of harm, but not explaining how it was construing RESTATEMENT (SECOND) OF TORTS § 324A(a)).

¶ 28. We conclude this reasoning is sound, is consistent with *Miller*, and is consistent with the Restatement illustration. Accordingly, we conclude that to fulfill the condition in subsec. (a), the actor's failure to exercise reasonable care in performing the undertaking must increase the risk of harm over that which would have existed had the defendant not engaged in the undertaking at all. The property owners point to no evidence showing that the respondents' conduct increased the rise in the water level compared to what it would have been had they not undertaken the project. The respondents' conduct may have failed to reduce or eliminate that risk and that conduct may constitute a failure to exercise reasonable care, but this does not fulfill the condition of subsec. (a).

> 2. Performing Duty Owed By the Other— § 324A(b).

¶ 29. The duty-owed-by-the-other alternative applies when the actor "has undertaken to perform a duty owed by the other to the third person." Subsection (b). The property owners contend the City had a legal duty to lower and maintain the lake's water level at a level imposed by the DNR. They rely on two pieces of evidence. First, in a 1994 proceeding before the DNR, based on a petition by the City for a declaratory ruling establishing an ordinary high water mark on Shell Lake pursuant to Wis. Stat. § 30.10, the DNR made this finding:

> In 1977, the City of Shell Lake entered into an agreement with the Department establishing an administrative ordinary high water mark (AOHWM) on Shell

Lake at an elevation of 1219.7 feet MSL. This agreement was developed to aid the City with adoption and administration of a shoreland ordinance and was done with the understanding that a surface water drain would be installed in order to maintain the lake level at or below this administrative elevation. The city has not installed the surface water drain.

Second, the property owners point to the deposition testimony of Daniel Kling, an engineer and principal of ECG, who was involved in this project as well as previous ones with the City. Kling stated his belief that the attempts to direct water to Sawyer Creek in 1998 were an attempt to establish a surface drain to comply with an earlier DNR order.[12]

---

[12] Kling's testimony was:

Q. ... Let's go back to the establishment of the ordinary high water mark in the floodplain ordinance. Was the DNR involved in the establishment with either the floodplain ordinance or the establishment of the ordinary high water mark?

A. Yes.

Q. Was is [sic] that because Shell Lake was navigable water and they had to be involved?

A. Yes.

Q. The initial order back in, I believe, 1994, that required the City to establish some type of drain in the lake, was that, do you know if that was done by consent decree or whether that was a contested case?

A. Repeat the question, 1990—

Q. Well, there was some point an order by the DNR to establish a surface drain in Shell Lake, correct?

A. Correct.

Q. Do you know know [sic] if that order was the result of a consent decree or a contested case with the DNR?

¶ 30. The property owners contend that the 1994 finding and Kling's testimony are evidence that the 1977 agreement required the City to install a surface water drain. The pipeline, they assert, is a fulfillment of that obligation, which the respondents undertook to perform. The respondents reply that, in the absence of any other evidence of the 1977 agreement and any evidence that the DNR ever attempted to require the City to install a surface drain, it is not reasonable to infer that the 1977 agreement imposed that obligation on the City.

¶ 31. Even if we assume that the evidence gives rise to a reasonable inference that the City was obligated by the 1977 agreement with the DNR to construct this pipeline, the property owners do not explain why that establishes a duty the City owed to them, as opposed to the DNR. Subsection (b) requires that the respondents undertake to perform a duty owed by the City "to the third person," that is, the person or persons seeking to hold the actor liable. Plainly, the property owners are the third persons. The property owners appear to assume that, if the City was bound by an agreement with the DNR to do something regarding Shell Lake, that constitutes a duty to them as property owners. This is not a self-evident proposition, and the property owners develop no argument based on statutory or case law to support it.

A. I don't know.

Q. Did you believe that the attempts to divert water into Sawyer Creek back in 1998 was an attempt to establish a surface drain?

A. Correct, yes.

Q. And that was an attempt to comply with the earlier DNR order?

A. I believe so.

¶ 32. The property owners also argue that, regardless whether the City had a duty to lower the water level, the City "undertook such a duty . . . [and the] [d]efendants undertook to satisfy the City's duty . . . ." This is not a reasonable construction of subsec. (b). Whatever the phrase "duty owed" as used in this subsection might mean, it cannot reasonably mean something the City decides to do voluntarily: that construction adds no condition for liability to the "assumption of duty" requirement in the introductory language and is thus inconsistent with *Miller*, 168 Wis. 2d at 884. *See* paragraph 24 above. The property owners' reliance on *Coffey* to support a contrary construction of subsec. (b) is an error. As we have already stated, in *Coffey* the court did not discuss the subsecs. (a)-(c), and *Miller* subsequently held that one of those conditions must be met to establish liability. *See* paragraph 25 above.

### 3. Harm Suffered Because of Reliance—§ 324A(c)

¶ 33. The reliance alternative applies if "the harm is suffered because of reliance of the other or the third person upon the undertaking." Subsection (c). The property owners contend they are entitled to a jury trial under this subsection because there is evidence that they suffered harm as a result of their reliance on the respondents' undertaking. They make three separate arguments to support this position.

¶ 34. First, the property owners contend that it is reasonable to infer they may have made alternative decisions in flood proofing, insurance, home construction, and renovation if the respondents had not undertaken the project. However, they point to no evidence from which one might reasonably infer that any of the property owners might have done any of these things, and, further, that any precautionary efforts would have

been effective in reducing the physical harm to their property. We have located no such evidence. Although the absence of evidence, in itself, resolves this argument against the property owners, we also observe that this type of evidence—what the property owners would have done and what that would have accomplished—is evidence that they are uniquely situated to produce in the form of affidavits. There is thus no merit to any suggestion that further discovery would have enabled them to better present their case in opposition to summary judgment.

¶ 35. The property owners also point to the fact that they paid a special assessment for the express purpose of funding the pipeline project. Even if this expenditure of money is considered a "harm," it is plainly an economic harm, not a physical harm. However, "the harm" suffered because of the reliance under subsec. (c) can only reasonably mean the "physical harm resulting from [the respondents'] failure to exercise reasonable care," referred to in the introductory language. The comment to subsec. (c) supports this construction:

> The actor is also subject to liability to a third person where the harm is suffered because of the reliance of the other for whom he undertakes to render the services, or of the third person himself, upon his undertaking. This is true whether or not the negligence of the actor has created any new risk or increased an existing one. Where the reliance of the other, or of the third person, has induced him to forgo other remedies or precautions against such a risk, the harm results from the negligence as fully as if the actor had created the risk.

Section 324A cmt. e. In addition, case law applying this

subsection generally focuses on reliance in the form of altering the precautions that might otherwise have been taken without the defendant's undertaking. *See Miller,* 168 Wis. 2d at 886, and cases cited there. The property owners have provided no case law to support their position that payment of a sum of money toward the undertaking meets the condition of subsec. (c).

¶ 36. Finally, the property owners argue that all parties knew that, if the pipeline project failed, severe property damage would ensue. This knowledge does not meet the condition of subsec. (c) but instead is relevant to the assumption of duty under the introductory paragraph—that the services rendered should be "rec-ognize[d] [by the actor] as necessary for the protection of a third person or his things . . . ." *See* paragraph 15 above. We reject this argument as well.

## C. *Conclusion*

¶ 37. Viewing the facts and the evidence in the light most favorable to the property owners, we conclude there are no genuine issues of material fact regarding the application of RESTATEMENT (SECOND) OF TORTS § 324A(a), (b), or (c). We also conclude that, based on the undisputed facts, the respondents are entitled to judgment as a matter of law that the conditions of subsecs. (a), (b), and (c) are not met. Thus, as a matter of law, the respondents are not liable to the property owners for any failure to exercise reasonable care in their undertakings on the project. Because of this conclusion, it is not necessary for us to address the respondents' argument that public policy precludes liability.

## II. Nuisance

¶ 38. The supreme court has recently clarified the law of nuisance in *Milwaukee Metropolitan Sewerage District v. City of Milwaukee*, 2005 WI 8, 277 Wis. 2d 635, 691 N.W.2d 658. A nuisance exists if there is a condition or activity that unduly interferes with the private use and enjoyment of land or a public right. *Id.*, ¶ 30. After it is established that a nuisance exists, the next step in a nuisance analysis is determining whether there is any liability-forming conduct. Proof of the underlying tortious conduct is an essential element in a nuisance analysis. *Id.*, ¶ 32. The liability-forming conduct may be either intentional or negligent. *Id.*, ¶ 33. In this case, the property owners do not allege or argue that the respondents are liable for nuisance because of intentional conduct. We therefore focus on the requirements for a nuisance claim grounded in negligence.

¶ 39. When the liability-forming conduct is grounded in negligence, an essential element of the nuisance claim is proof that the underlying conduct is " 'otherwise actionable under the rules controlling liability for negligent . . . conduct.' " *Id.*, ¶ 44 (citation omitted).

> A corollary to this principle is that when a nuisance is grounded solely on negligent acts, there is no need to separately analyze a cause of action for negligence and nuisance because the negligence is but the tortious conduct upon which liability for the result—the nuisance—depends. Where an alleged nuisance is not based upon intentional conduct, "[i]t necessarily follows that if there was no negligence there was no nuisance."

*Id.* (citation omitted). Based on these principles, the

court in *Milwaukee Metro. Sewerage* decided that, when liability for a nuisance is predicated upon a failure to act, notice of the defective condition is a prerequisite to nuisance liability because that is a prerequisite for liability for negligence based on a failure to act. *Id.*, ¶ 48.

¶ 40. In this case, the property owners allege a private nuisance. In order to prevail on their nuisance claim, then, they must prove the following elements: (1) there is an undue interference with their private use and enjoyment of their land, (2) the respondents' conduct is the legal cause of that private nuisance, and (3) the respondents' conduct is otherwise actionable under the rules governing liability for negligent conduct. *Id.*, ¶ 63. Even if we assume that there is evidence on the first and second elements that entitle the property owners to a trial, there is no evidence that would entitle them to a trial on the third element. We have already held that, viewing the evidence most favorably to the property owners and drawing all reasonable inferences in their favor, there is no evidence the respondents are liable under RESTATEMENT (SECOND) OF TORTS § 324A. We have also rejected the property owners' argument that the respondents are liable to them for negligence even if the criteria of § 324A are not met. Therefore, there is no evidence that, if accepted by the jury, would establish that the respondents' conduct is "otherwise actionable under the rules governing liability for negligent conduct." *Milwaukee Metro. Sewerage*, 277 Wis. 2d 635, ¶ 63. In short, because the record does not entitle the property owners to a trial on their negligence claim, they are not entitled to a trial on their nuisance claim grounded in negligence. *See id.*, ¶ 44.

¶ 41. The property owners argue that, even absent negligence, they may recover "by showing that [respondents] engaged in unreasonable activity that substantially interfered with plaintiffs' comfortable property use." However, the cases they rely on—*Welch v. City of Appleton,* 2003 WI App 133, 265 Wis. 2d 688, 666 N.W.2d 511, and *Anhalt v. Cities and Villages Mutual Insurance Co.,* 2001 WI App 271, 249 Wis. 2d 62, 637 N.W.2d 422—were among those expressly noted by the court in *Milwaukee Metro. Sewerage* as applying the immunity statute (because all involved municipalities) "utiliz[ing] conflicting rationales to reach results that are not entirely consistent." 277 Wis. 2d 635, ¶ 59 n.17. *Welch,* the court observed, erred in employing a separate analysis for negligence and nuisances grounded in negligence, and *Anhalt* "fail[ed] to stress that a municipality is liable for its negligent acts only if those acts are performed pursuant to a ministerial duty." *Id.* To the extent that either *Welch* or *Anhalt* support the proposition that a nuisance claim need not be grounded either in intentional conduct or in otherwise actionable negligence, they are no longer good law on that point after *Milwaukee Metro. Sewerage. See Madison Reprographics, Inc. v. Cook's Reprographics, Inc.,* 203 Wis. 2d 226, 238, 552 N.W.2d 440 (Ct. App. 1996) (if a court of appeals decision conflicts with a decision of the supreme court, we must follow the decision of the supreme court).

*By the Court.*—Judgment affirmed.