Certain Underwriters at Lloyds, London, and BJB, Inc., D/B/A City News, Plaintiffs,
v.
American Colloid Company, ABC Insurance Company, Howmet Corporation, and Def Insurance Company, Defendants,
Acuity, A Mutual Insurance Company, Defendant-Third-Party, Plaintiff-Appellant,
v.
Paul T. Klein, d/b/a FNG Industries, Third-Party Defendant-Respondent, 
Utica Mutual Insurance Company and Calandra-Ladd Agency, Inc., Third-Party Defendants.
Nos. 2005AP784, 2005AP1685
Court of Appeals of Wisconsin, District II.
May 24, 2006.
Before Brown, Nettesheim and Anderson, JJ.
¶1 PER CURIAM.
Acuity insurance company appeals from a summary judgment dismissing its claims that Paul Klein was negligent with respect to a hazardous material repacking business. Acuity also appeals from an order denying its motion for reconsideration of the summary judgment decision. It argues that the undisputed facts permit conflicting inferences about Klein's liability such that summary judgment was inappropriate and that newly discovered evidence required reconsideration. We affirm the judgment of dismissal and the order denying reconsideration.
¶2 In October 2002 a fire occurred at property owned by BJB, Inc., insured by Certain Underwriters of Lloyds, London, and utilized for business operations by A&B Enterprises. Acuity provided liability insurance to A&B. A&B repackaged hazardous materials used in the foundry industry. The fire originated while a machine owned and operated by A&B was repackaging an exothermic material.[1]
¶3 In 1997 Klein came up with the idea that his daughters, Amanda and Beth, could provide material repackaging services to the foundry industry and he helped them start A&B. At the time of the fire, Amanda and Wayne Standarski, Klein's son-in-law, operated the business.
¶4 The property owner filed an action against A&B, the Standarskis and Acuity alleging negligence in starting the fire and severely damaging its property. Claims against the Standarskis and A&B were dismissed after those parties filed for bankruptcy. Acuity filed a third-party complaint against Klein alleging that the fire was the result of Klein's negligent or reckless acts and his failure "to properly train and supervise Amanda Standarski and Wayne Standarski in the repackaging of hazardous materials." It also alleged that Klein was negligent in failing to follow federal, state and local regulations concerning the use of hazardous materials.
¶5 Klein sought summary judgment on the ground that he had no duty to train or supervise the Standarskis because he was not their employer.[2] He also claimed that he had no duty to follow any chemical regulations because he was neither an owner, importer, nor manufacturer of chemicals. He asserted that it was undisputed that the cause of the fire was Wayne's failure to use the proper extinguishing material, and therefore, any negligence attributable to himself was not a cause of Acuity's damages. Summary judgment was granted and Acuity's petition for leave to appeal the nonfinal judgment was granted.[3] Acuity filed a motion for reconsideration while the petition for leave to appeal was pending. The motion for reconsideration was denied and Acuity's petition for leave to appeal that ruling was also granted.
¶6 We review the circuit court's grant of summary judgment using the same methodology as the circuit court. Butler v. Advanced Drainage Systems, Inc., 2005 WI App 108, ¶11, 282 Wis. 2d 776, 698 N.W.2d 117, review granted, 2005 WI 150, 286 Wis. 2d 98, 705 N.W.2d 659 (No. 2004AP1991). When there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. WIS. STAT. § 802.08(2) (20030-4).[4]
[T]he plaintiff avoids summary judgment against it only by submitting evidence that, if believed, would entitle it to judgment. In deciding whether there are genuine issues of material fact, we view the evidence most favorably to the non-moving party, drawing all reasonable inferences from the evidence in that party's favor. Whether an inference is reasonable and whether particular evidence permits more than one reasonable inference are both questions of law, which we review de novo.
Butler, 282 Wis. 2d 776, ¶11 (citations omitted).
¶7 It is Acuity's position that by his continuous involvement in A&B's business, Klein assumed responsibility for aspects of the operation, including the duty to provide services, such as training, necessary to the protection of others. See Kramer v. Hayward, 57 Wis. 2d 302, 308, 203 N.W.2d 871 (1973) ("Although one may have no duty to perform an act, if he attempts to do something to another, even though gratuitously, he must exercise reasonable care."); Butler, 282 Wis. 2d 776, ¶14; WIS JICIVIL 1397. It also contends that Klein was negligent in failing to follow regulations regarding the handling of hazardous materials which he knew A&B was handling.
¶8 Before addressing either contention, we are drawn to the undisputed facts concerning Wayne Standarski's role in the fire. Wayne was repackaging the exothermic material when the fire started. Wayne started working at A&B along side Amanda sometime after the coupled married in January 1998. He considered himself self-trained in handling the materials A&B worked with. He had read the operating manual for the machine used in repackaging materials. He had ordered information about the materials. He had read the material data sheets for the materials A&B handled. In May 2002, A&B received certification as a hazardous material handler from the United States Department of Transportation. Wayne knew that the exothermic material produced a combustible gas when in contact with moisture. He was aware that a resulting fire had to be smothered. He knew sand was a proper extinguishing agent for the material and that the data material sheet specified that water, Halogenated agents, or ABC dry chemical agents should not be used to fight a fire caused by the material. There was sand available at A&B's premises. Wayne explained that when the fire broke out, he panicked and grabbed the first available thinga Halon extinguisherbelieving it would extinguish the fire.
¶9 The undisputed facts are that Wayne possessed sufficient information about the nature of the exothermic material and how to extinguish any related fire. The unfortunate fact is that when it came time to put that knowledge to use, Wayne failed to properly execute it.
¶10 To prevail on a negligence claim, Acuity must establish a causal connection between the Klein's alleged breach of a duty of care and its injury. See Butler, 282 Wis. 2d 776, ¶12.
Causation in Wisconsin exists where the defendant's negligence was a substantial factor in producing the plaintiff's harm. Substantial factor "denotes that the defendant's conduct has such an effect in producing the harm as to lead the trier of fact, as a reasonable person, to regard it as a cause, using that word in the popular sense."
...
A plaintiff in a negligence action carries a twofold burden of proving causation. First, the plaintiff has the burden of producing evidence, satisfactory to the judge, from which a jury could reasonably find a causal nexus between the negligent act and the resulting injury. If the plaintiff fails to meet this burden, the plaintiff has failed to establish a prima facie issue of causation and the defendant is entitled to a directed verdict.
Fischer v. Ganju, 168 Wis. 2d 834, 857, 485 N.W.2d 10 (1992) (citations omitted).
¶11 Acuity did not produce evidence in opposition to the motion for summary judgment of what further training by Klein would have changed the fact that Wayne failed to employ what he knew to be the proper method of extinguishing the fire. It did not establish that compliance with regulations regarding the materials would have changed Wayne's reaction to the fire or the manner in which the exothermic material was handled. There is no causal connection between Klein's alleged negligence and Acuity's damages. It was Wayne's panicked reaction and not any conduct by Klein that caused the fire to spread and caused severe property damages. Acuity did not produce evidence in opposition to the motion for summary judgment that there was any other cause.
¶12 Acuity points out that Klein was intimately connected to A&B's operation.[5] It also places great emphasis on Klein's failure to train Amanda when putting her into the business.[6] However, the lack of a causal connection is dispositive and requires dismissal of Acuity's claims against Klein.
¶13 The circuit court denied Acuity's motion for reconsideration of the dismissal of its claims against Klein because Acuity raised no novel argument or authority that was not or could not have been raised before the initial ruling. In the interests of efficient judicial administration the court refused to permit Acuity to augment the summary judgment record. The decision on a motion for reconsideration is reviewed under the erroneous exercise of discretion standard. Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd., 2004 WI App 129, ¶6, 275 Wis. 2d 397, 685 N.W.2d 853. "To prevail on a motion for reconsideration, the movant must present either newly discovered evidence or establish a manifest error of law or fact." Id., ¶44. A motion for reconsideration "cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion. . . . Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time." Rothwell Cotton Co. v. Rosenthal & Co., 827 F.2d 246, 251 (7th Cir. 1987).
¶14 On reconsideration Acuity wanted the circuit court to consider "new evidence" from the continued deposition of Klein held March 14, 2005, and the April 29, 2005 deposition of Keith Endelman, a procurement manager for Howmet Corporation, an A&B customer.[7] Acuity argued that the evidence demonstrated that A&B was in fact Klein's business. Endelman described how Klein solicited Howmet's business in February 1998 and the representations Klein made about A&B.[8] Acuity also argued that the depositions demonstrated that Klein had modified the machine A&B used for bagging materials.
¶15 Acuity's reconsideration submission did not explain why the newly discovered evidence had not been produced in response to the motion for summary judgment. Klein's deposition was taken prior to the summary judgment ruling. Howmet Corporation was a party to the action. There was no question that the fire originated in the bagging machine. At no time did Acuity ask the circuit court to stay the summary judgment proceeding until additional discovery could be completed. See WIS. STAT. § 802.08(4). Further, Acuity's claim that Klein modified the bagging machine is a new theory of liability that cannot be advanced for the first time on a motion for reconsideration. The circuit court did not erroneously exercise its discretion in denying the motion for reconsideration.
By the Court.  Judgment and order affirmed.
NOTES
[1] When in contact with moisture, exothermic material creates combustible gas.
[2] Klein originally filed a motion for judgment on the pleadings. Acuity's opposition to that motion raised matters outside of the pleadings. The circuit court directed that the motion should be heard as one for summary judgment and Klein filed a motion for summary judgment.
[3] Summary judgment dismissing Acuity's claims against Klein did not terminate the litigation as to Klein because of cross-claims between the third-party defendants.
[4] All references to the Wisconsin Statutes are to the 2003-04 version unless otherwise noted.
[5] A&B's operations originally shared space with FNG Industries, a foundry industry formed by Klein. At the fire site, A&B shared space with American Colloid Company, Klein's employer. A&B utilized American Colloid's equipment, including a desk, computer, and phone. Utilizing his contacts in the foundry industry, Klein procured customers for A&B. At the start, when only one type of material was being repackaged for only one customer, Klein showed his daughters how to scoop up material by hand and place it in bags. He found the machine that was utilized in A&B's operations, co-signed a loan for purchase of the machine, observed and asked questions when in March 1997, the machine was delivered to A&B and the manufacturer's representatives showed Amanda how to operate the machine. In March 1999, he made initial contact with an insurance agent on A&B's behalf. We observe that most of Klein's involvement in A&B was attenuated in time from the operation of the business at the time of the fire.
[6] It is undisputed that shortly after Wayne started working at A&B, Amanda no longer worked with materials on site.
[7] The motion for summary judgment was heard and granted at a hearing held February 28, 2005.
[8] Acuity also cited the May 2005 depositions of the fire marshall, a spill coordinator for the Department of Natural Resources, and a response coordinator for an emergency response service called to the site of the fire as evidence that Klein represented himself as a principal of A&B.